## A08A1503. LAURENS COUNTY BOARD OF EDUCATION et al. v. DEWBERRY.

(674 SE2d 73)

JOHNSON, Presiding Judge.

We granted this discretionary appeal to the Laurens County Board of Education and its current insurer, Georgia Education Workers' Compensation Trust Fund ("GEWCT"), to review the superior court's order affirming the award of the administrative law judge ("ALJ") and the appellate division of the State Board of Workers' Compensation in this dispute between the Board of Education's current and prior insurance carriers. For reasons that follow, we affirm the trial court's order finding that Walter Dewberry experienced a fictional new accident and holding GEWCT, rather than the Board of Education's prior insurer, the Georgia School Board Association Self-Insurance Fund ("GSBA"), responsible for Dewberry's claims.

The relevant facts of this case are not in dispute. Dewberry worked as a custodian for the Board of Education. His job duties included mopping, stripping, and buffing floors and changing light bulbs. On August 1, 2000, he was using a machine to strip a floor when the cord wrapped around his leg. He slipped and injured his right knee. Since that time, he has continually experienced pain and problems with his knee. Immediately after his fall, a doctor diagnosed Dewberry with a medial meniscus tear of the right knee and underlying degenerative arthritis of the right knee. Dewberry initially underwent conservative treatment for several months, while he continued to work. Because he showed little improvement, however, his doctor recommended arthroscopic surgery, which was performed on September 11, 2001.

Following the surgery, Dewberry was out of work for six weeks. The Board of Education's insurance company at that time was GSBA, which paid all of Dewberry's medical bills. Dewberry did not request and GSBA did not pay Dewberry any income benefits. After the six-week recovery period, Dewberry returned to work, resuming his previous duties with certain limitations. On February 2, 2002, Dewberry's physician issued a permanent disability rating of nine percent to the lower extremity or four percent to the whole person. However, Dewberry continued to work, and GSBA did not pay him any permanent partial disability income benefits.

In 2004, after GEWCT assumed insurance responsibility for the Board of Education, Dewberry sought additional medical treatment for his knee pain and discomfort. The doctor noted that Dewberry was experiencing progressive right knee discomfort due to arthritic damage in his knee. According to the doctor, he "would not relate [Dewberry's] increased progressive symptoms solely attributable to

his previous workman's comp injury." The doctor advised Dewberry that knee replacement surgery would likely be necessary, but Dewberry declined surgery at that point. The doctor prescribed pain medicine and returned Dewberry to regular work duty.

Dewberry again saw the doctor in June 2004, continuing to complain of pain and discomfort in his knee, at which point the doctor gave him a work modification to stay off ladders. After the June doctor visit, GSBA, which had been paying all of Dewberry's medical bills without question, controverted the claim. GSBA subsequently resumed paying for medical treatment after reaching an agreement with Dewberry to have a different doctor provide treatment.

On July 7, 2005, Dewberry went to see a new doctor, who eventually recommended knee replacement surgery. This doctor noted that the knee replacement was related to the underlying injury of August 2000: "Right knee continues to be symptomatic and is a result of the original injury." Dewberry agreed to the surgery, which was scheduled for November 8, 2005, but GSBA canceled the surgery and stopped paying for medical treatment. On November 17, 2005, the doctor placed Dewberry on restrictions with no weight bearing on his right knee until the insurance issue was resolved so that Dewberry could receive knee surgery. The Board of Education did not accommodate his light duty restrictions, and Dewberry was forced to stop working on November 18, 2005. Dewberry then filed a claim with the State Board of Workers' Compensation.

The ALJ found that after Dewberry's August 1, 2000 injury, he continued to perform the duties of his employment until November 18, 2005, at which time he was forced to cease work because of the gradual worsening of his condition, which was at least partially attributable to his physical activity in continuing to work. Thus, the ALJ reasoned that Dewberry suffered a fictional new accident on November 18, 2005, and held GEWCT, which had assumed insurance coverage for the Board of Education as of August 1, 2003, responsible for paying Dewberry's claims arising out of the fictional new accident. The appellate division affirmed the ALJ's award, and the superior court also affirmed. The Board of Education and GEWCT now appeal to this Court.

GEWCT argues that, as a matter of law and fact, Dewberry experienced a change in condition for the worse under OCGA § 34-9-104, not a fictional new injury, and thus GSBA remains responsible for paying Dewberry's claims. We disagree.

In reviewing a workers' compensation award, this Court must construe the evidence in the light most favorable to the party

prevailing before the appellate division.[1] The findings of the State Board of Workers' Compensation, when supported by any evidence, are conclusive and binding, and neither the superior court nor this Court may substitute itself as a factfinding body in lieu of the State Board.[2] Moreover, whether an employee's inability to continue working is caused by a fictional new accident or by a change of condition is a question of fact for the ALJ, and such a finding of fact may not be disturbed on appeal if any evidence supports it.[3] Where an employer changes insurance carriers, the carrier on the date of a fictional new accident is liable for the claim, even where the condition existed prior to the carrier's coverage.[4]

ALJs and this Court are often required to distinguish between old and new injuries in workers' compensation cases. It is well established, however, that

> [a] necessary factual predicate to a determination that a change in condition, rather than a new injury (or new accident), has occurred is that there has previously been an award (or equivalent) for the injury whose worsening has produced the present disability. . . . In cases where a claimant is injured and receives workers' compensation benefits, but subsequently returns to work and then undergoes a gradual worsening of his condition to the point where he is no longer able to perform his ordinary work, he has undergone a change in condition. A claim for a change of condition is a claim for additional compensation under the original award.[5]

Thus, statutory and case law make it clear that a change in condition "can occur only when the claimant has previously received benefits for a compensable job-related injury."[6] If a claimant is injured on the job but continues to perform the duties of his employment without receiving any workers' compensation benefits, but subsequently is forced to cease work because of the gradual worsening of his condition, which is at least partially attributable to his physical activity in continuing to work, we have held that the result is a fictional new accident, and the date of the new accident is the date

---

[1] See *Jones County Bd. of Ed. v. Patterson*, 255 Ga. App. 166, 167 (564 SE2d 777) (2002).

[2] Id.

[3] See *Guarantee Mut. Ins. Co. v. Wade Investments*, 232 Ga. App. 328, 330 (499 SE2d 925) (1998).

[4] See *Liberty Mut. Ins. Co. v. White*, 139 Ga. App. 85, 87 (227 SE2d 886) (1976).

[5] (Citations, punctuation and emphasis omitted.) *Northbrook Property &c. Ins. Co. v. Babyak*, 186 Ga. App. 339, 341 (367 SE2d 567) (1988).

[6] Id.

that the disability manifests itself.[7]

In the present case, the ALJ found that after Dewberry's August 1, 2000 injury, he continued to perform the duties of his employment without receiving any workers' compensation benefits until November 18, 2005, at which time he was forced to cease work because of the gradual worsening of his condition, which was at least partially attributable to his physical activity in continuing to work. The ALJ deemed Dewberry's injury on November 18, 2005 a fictional new accident. The record contains evidence supporting this conclusion.

Contrary to GEWCT's argument, the mere fact that Dewberry missed work following his initial accident does not eliminate the establishment of a fictional new accident. Case law and statutes make it clear that new accident theory cases apply in those instances where a claimant is injured and goes back to work without any agreement or award as to that injury having been approved or issued by the State Board of Workers' Compensation.[8] That is exactly what happened in this case. It is undisputed that Dewberry returned to work after his injury without any agreement or award as to that injury being approved or issued by the State Board of Workers' Compensation. He then continued to work his regular job until November 18, 2005. Without any workers' compensation award or voluntary payment of income benefits subsequent to Dewberry's initial injury, GEWCT cannot establish a change of condition under OCGA § 34-9-104 (a) (1).[9]

Attempting to bypass the prior award or voluntary income benefit payment requirement for a change in condition, GEWCT argues that GSBA should have paid income benefits to Dewberry based on his original injury and that the lower court awards unjustly reward GSBA for its failure to pay these benefits. However, there is no evidence in the record that Dewberry was legally due any income benefits. An employee has the initial burden of proving a disabling, work-related injury entitling him to workers' compensation benefits.[10] Here, the record is undisputed that Dewberry never filed a claim for benefits, never proved a compensable injury, and never established the extent of his injury before an ALJ until 2006.

Moreover, although GSBA paid medical benefits, the record does not show that it ever accepted the August 12, 2000 injury as compensable. GSBA cites no case, and we can locate no case, in which the voluntary payment of medical benefits constituted an "award"

---

[7] See id.; *Central State Hosp. v. James*, 147 Ga. App. 308, 309 (1) (a) (248 SE2d 678) (1978).

[8] See *Wade Investments*, supra at 329; *Babyak*, supra.

[9] See *Babyak*, supra.

[10] See *Dan Vaden Chevrolet v. Mann*, 234 Ga. App. 500, 501 (1) (506 SE2d 653) (1998).

so as to allow a claimant to file for a change in condition. In fact, such a proposition would undoubtedly halt the voluntary payment of medical benefits by employers, clearly an undesired result. We agree with Dewberry's argument that where an employer/insurer pays only medical, rather than income, benefits to a claimant, there has been no establishment of the claimant's condition so that any subsequent action by the claimant for income benefits is not a "change in condition" action.[11]

Because Dewberry never received a workers' compensation award or voluntary payment of income benefits for his original on-the-job injury, he cannot establish a change in condition.[12] The ALJ's finding that Dewberry suffered a fictional new accident when he was forced to cease work on November 18, 2005 is supported by the evidence, and we are, therefore, constrained to uphold this finding.[13] The Appellate Division and the superior court were correct in affirming the ALJ's conclusion that GEWCT, as the insurer at the time of Dewberry's fictional new accident, is responsible for paying the claims.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED FEBRUARY 19, 2009.

*Swift, Currie, McGhee & Hiers, Robert R. Potter, James A. Robson,* for appellants.

*Nelson & Smith, Blake J. Smith, Wall & Elliott, Elton L. Wall, Claire Cronin,* for appellee.

[11] See generally *Wier v. Skyline Messenger Svc.,* 203 Ga. App. 673, 676 (2) (417 SE2d 693) (1992).

[12] *Babyak,* supra.

[13] See *Wade Investments,* supra at 330.