A09A1624. TRUCKS, INC. et al. v. TROWELL.
(690 SE2d 880)

BERNES, Judge.

Trucks, Inc. and its insurer, Great West Casualty Company, appeal the superior court's order affirming an award of benefits by the Appellate Division of the State Board of Workers' Compensation (the "State Board") in favor of Marion Trowell, who injured her right shoulder while employed at Trucks. In affirming the award, the superior court found that Trowell's disability resulted from a "change in condition" rather than a "new accident." While the superior court erred in making this finding, we affirm under the principle of right for any reason because there was evidence that Trowell's disability was solely attributable to her initial work-related injury rather than to a gradual worsening of the injury caused by her continuing to work.

In reviewing a workers' compensation award, we construe the evidence in the light most favorable to the party prevailing before the State Board. *Ray Bell Constr. Co. v. King*, 281 Ga. 853, 854 (642 SE2d 841) (2007). So viewed, the evidence shows that Trowell worked full

---

time as a truck driver for Trucks, Inc. Her job duties included driving a tractor-trailer rig to and from Florida and manually hooking and unhooking trailers to the rig. In order to hook and unhook the trailers, she was required to use a hand crank which rolled down the landing gear of the trailers. On April 18, 2006, Trowell was rolling down the landing gear of a trailer when she felt a burning sensation in her right shoulder.

Trowell continued working at regular duty, but she sought medical treatment for pain in her neck and right shoulder. She timely notified Trucks of the April 18 incident, and Trucks and its insurer, Great West Casualty Company, accepted her claim as compensable under the Workers' Compensation Act, OCGA § 34-9-1 et seq., as a "medical-only" claim and initially paid for her medical treatment while she continued to work.

Trowell was treated at a family medical practice, but when her shoulder injury did not improve, she was referred to Dr. James Barber, an orthopedic surgeon. Dr. Barber began treating Trowell in June 2006, three months after the initial injury. After Dr. Barber examined Trowell and reviewed x-rays that he had ordered, he diagnosed Trowell with a "positive impingement" of her right shoulder, which is a pinching of the tendons of the rotator cuff between the head of the humerus (the upper arm bone) and the acromion (a bony projection at the top of the shoulder). His diagnosis was consistent with a magnetic resonance imaging ("MRI") of Trowell's shoulder that had been performed earlier that month. Dr. Barber authorized Trowell to continue working at regular duty but administered a steroid injection and prescribed anti-inflammatory medication and physical therapy.

Over the ensuing months, Trowell underwent physical therapy and continued to see Dr. Barber for treatment of her shoulder through medication and steroid injections. During this time, Trowell maintained her regular job duties at Trucks.

On October 9, 2006, Trowell resigned from her employment with Trucks due to a work slowdown. Later that month, she began working as a truck driver for Trans Systems, Inc. While employed at Trans Systems, Trowell drove a dump truck back and forth to Florida and other locations. Trowell did not have to use a hand crank to raise and lower trailers as she had done in her former job with Trucks, but she did have to work a manual gear shift with her right arm while driving the dump truck. She was able to dump the load of the truck by simply pushing a button. Trowell worked for Trans Systems for a little over a month but quit on December 15, 2006 after "work got real slow."

Because of continued pain caused by her right shoulder injury, Trowell saw Dr. Barber in December 2006 and again in January

2007. A follow-up MRI performed in January 2007 confirmed the continued presence of a positive impingement of the shoulder. At that point, Dr. Barber recommended arthroscopic surgery to remove bone causing the impingement and to evaluate the condition of Trowell's rotator cuff. He also advised Trowell to cease working until the surgery could be performed. Trowell has not had the surgery or sought employment since that time.

In light of her intervening employment with Trans Systems, Truck and Great West refused to pay for the surgery or for any further medical treatment of Trowell's right shoulder. Trowell responded by filing a workers' compensation claim against Trucks and Great West in March 2007. She sought temporary total disability benefits commencing on the first date that Dr. Barber had advised that she cease work until surgery was performed, as well as payments for continuing medical treatment of her injury, including the recommended surgery with Dr. Barber.

An administrative hearing was conducted in which there was conflicting evidence concerning whether Trowell's initial right shoulder injury was worsened and aggravated by her subsequent work as a dump truck driver with Trans Systems. At the conclusion of the hearing, the administrative law judge ("ALJ") allowed time for the parties to file briefs addressing the evidence and legal issues pertaining to Trowell's claim.

In her post-hearing brief, Trowell asked the ALJ to resolve the conflicting evidence in her favor and find that her initial injury remained essentially the same from the time of the April 18 incident until Dr. Barber recommended that she cease work. In contrast, Trucks and Great West asked the ALJ to find that Trowell's initial injury was worsened and aggravated by her use of the manual gear shift while operating the dump truck for Trans Systems, thereby absolving them of legal responsibility for her current medical condition. Trucks and Great West also argued that because Trowell had changed employment after her initial injury, she was required to prove that her present disability resulted from a change in condition, which they claimed she was unable to do.

Following the hearing and receipt of briefs, the ALJ ruled in favor of Trowell. The ALJ resolved the conflicting evidence and found that Trowell's current medical condition was the result of the initial injury she sustained on April 18, 2006 rather than a change in condition or new accident. The ALJ rejected the contention by Trucks and Great West that Trowell's current right shoulder problem was caused by her employment with Trans Systems.

After a review of the record as a whole, the State Board adopted the factual findings and conclusions of law of the ALJ as its own and affirmed the decision to award benefits to Trowell. The superior

court also affirmed, but on the ground that Trowell had proven a change in condition entitling her to benefits. Trucks and Great West filed an application for discretionary review of the superior court's order, which we granted, resulting in this appeal.

1. Trucks and Great West contend that the superior court erred in finding that Trowell's present disability resulted from a change in condition rather than a new accident. We agree that the undisputed evidence shows that the prerequisites for establishing a change in condition were not met in this case.

Where new employment intervenes between the time when an employee is initially injured and when his injury worsens to the point that it becomes disabling and he can no longer work, the employee can under certain circumstances recover against his original employer/insurer if his inability to work was the result of a "change in condition" rather than a "new accident." See, e.g., *Beers Constr. Co. v. Stephens*, 162 Ga. App. 87, 89-91 (2) (290 SE2d 181) (1982); *Slattery Assoc. v. Hufstetler*, 161 Ga. App. 389, 390-391 (288 SE2d 654) (1982); *Certain v. United States Fidelity &c. Co.*, 153 Ga. App. 571, 572-573 (266 SE2d 263) (1980). The ALJ and State Board's factual findings on this issue are binding and conclusive if supported by any evidence, and the superior court is not authorized to substitute its own judgment. See *Cypress Cos. v. Brown*, 246 Ga. App. 804, 806 (542 SE2d 544) (2000); *Eastern Airlines v. Moss*, 197 Ga. App. 61, 62 (397 SE2d 445) (1990).

> In *Central State Hosp. v. James*, [147 Ga. App. 308, 309-310 (1) (248 SE2d 678) (1978)], this Court distinguished between those disabilities resulting from a change in condition and those resulting from a new accident. When a claimant sustains an injury, *is awarded compensation*, returns to his normal and ordinary job duties, but then as a result of the wear and tear of ordinary life and the activity connected with performing his normal duties, his condition gradually deteriorates to where he cannot continue to perform his ordinary work, such facts constitute a change in condition and not a new accident. On the other hand, when a claimant is injured on the job but continues, *without an agreement or award*, to perform the duties of his employment until forced to cease work because of a gradual worsening of his condition that is at least partly attributable to his physical activity in continuing to work, such facts constitute a new accident. A new accident may result either from a gradual worsening of a pre-existing injury due to aggravation by work duties or from the occurrence of a specific job-related incident.

LAW LIBRARY

(Punctuation and footnotes omitted; emphasis supplied.) *Cypress Cos.*, 246 Ga. App. at 806-807. As our statutory law and precedent make clear, a disability cannot be the result of a change in condition unless there has been a prior award of benefits (or the equivalent of such an award) issued by the State Board for the initial injury that resulted in the present disability. See OCGA § 34-9-104 (a) (1);[1] *Laurens County Bd. of Ed. v. Dewberry*, 296 Ga. App. 204, 207-208 (674 SE2d 73) (2009); *Cypress Cos.*, 246 Ga. App. at 806-807; *Northbrook Property &c. Ins. Co. v. Babyak*, 186 Ga. App. 339, 341 (367 SE2d 567) (1988). "Stated differently, an initial claim for workers' compensation cannot be based on a change in condition because a condition has never been established by a prior award or otherwise." (Punctuation omitted.) *Maryland Cas. Co. v. Walls*, 184 Ga. App. 267, 268 (1) (361 SE2d 253) (1987), rev'd in part on other grounds by *American Centennial Ins. Co. v. Flowery Branch Nursing Center*, 258 Ga. 222, 223 (367 SE2d 788) (1988). And while the prior voluntary payment of income benefits by an employer/insurer is equivalent to a formal award of benefits issued by the State Board for purposes of establishing a change in condition, see *Wier v. Skyline Messenger Svc.*, 203 Ga. App. 673, 676 (2) (417 SE2d 693) (1992), we have recently held that the prior voluntary payment of medical benefits by an employer/insurer is not equivalent. See *Dewberry*, 296 Ga. App. at 207-208.

It is undisputed that Trowell never previously received an award of workers' compensation benefits from the State Board, nor voluntary payment of income benefits from Trucks or Great West, for her initial job-related injury to her right shoulder sustained on April 18, 2006. Rather, Trucks and Great West voluntarily paid medical benefits to Trowell for her injury for a period of time. Accordingly, the undisputed facts do not support the superior court's finding of a present disability resulting from a change in condition. See OCGA § 34-9-104 (a) (1); *Dewberry*, 296 Ga. App. at 207-208; *Cypress Cos.*, 246 Ga. App. at 806-807; *Babyak*, 186 Ga. App. at 341.

2. Although the superior court erred in finding a change in condition, we affirm under the principle of right for any reason. The ALJ and State Board found that Trowell's present disability resulted from the initial shoulder injury she sustained on April 18, 2006, rather than a change in condition or new accident. An award of

---

[1] OCGA § 34-9-104 (a) (1) defines "change in condition" as
a change in the wage-earning capacity, physical condition, or status of an employee or other beneficiary covered by this chapter, which change must have occurred after the date on which the wage-earning capacity, physical condition, or status of the employee or other beneficiary *was last established by award or otherwise.*
(Emphasis supplied.)

benefits against the original employer/insurer can be affirmed even in the absence of a change of condition, if there was evidence that the claimant's inability to work was solely attributable to his initial job-related injury, rather than to a worsening of his condition attributable to continuing to work after the initial injury. See *Hartford Accident &c. Co. v. Mauldin*, 147 Ga. App. 230, 230-231 (1) (248 SE2d 528) (1978). See also *Guarantee Mut. Ins. Co. v. Wade Investments*, 232 Ga. App. 328, 330 (499 SE2d 925) (1998) (noting that initial injury claim requires showing that claimant's inability to work "was not caused by a gradual worsening of his condition attributable to continuing to work after the actual injury"); *Babyak*, 186 Ga. App. at 340-341 (affirming award of benefits where present disability was caused by initial "accident"). Such evidence existed here.

At the administrative hearing, Trowell testified that the only time that she ever injured her right shoulder was on April 18, 2006 while employed at Trucks, and she denied that her shoulder pain increased over time as a result of her job duties there. According to Trowell, the symptoms and pain associated with her injury did not increase after she began working for Trans Systems. She further testified that her job with Trans Systems was "lighter work" than her job with Trucks, that she did not suffer any new injuries while she worked at Trans Systems, and that she resigned from Trans Systems due to a work slowdown rather than a worsening or aggravation of her condition. Trowell also denied that working the manual gear shift on the dump truck at Trans Systems caused her any increased symptoms or pain in her right shoulder.

The deposition testimony of Dr. Barber also was admitted at the hearing. Although he gave conflicting testimony on the issue, Dr. Barber testified on direct examination that it was his opinion to a reasonable degree of medical certainty that Trowell's current medical condition was caused by the April 18 incident. He also testified that the MRI taken in January 2007 showed "essentially the same" positive impingement of Trowell's right shoulder as the initial MRI taken after the April 18 incident. Additionally, Dr. Barber testified that he recommended that Trowell cease working and obtain arthroscopic surgery because she "has run out of non-surgical options."

This combined testimony, when construed in favor of Trowell as the prevailing party, established that Trowell's present disability was not caused by a worsening of her condition attributable to continuing to work either at Trucks or Trans Systems. Rather, her current inability to work was attributable solely to the shoulder injury she sustained in the April 18 incident, which had persisted even though all nonsurgical treatment options had been exhausted. Because there was evidence to support the finding by the ALJ and State Board that

Trowell's present disability resulted from the initial shoulder injury rather than a change in condition or new accident, we affirm the award of benefits in this case. See *Mauldin*, 147 Ga. App. at 230-231 (1). See also *Wade Investments*, 232 Ga. App. at 329-330; *Babyak*, 186 Ga. App. at 340-341. Compare *Liberty Mut. Ins. Co. v. White*, 139 Ga. App. 85, 87 (227 SE2d 886) (1976).

*Judgment affirmed. Blackburn, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 8, 2010 —
RECONSIDERATION DENIED FEBRUARY 25, 2010 — 

*Bovis, Kyle & Burch, Benjamin A. Leonard*, for appellants.
*Farrar, Hennesy & Tanner, Curtis Farrar, Jr., Matthew J. Hennesy*, for appellee.