A11A0636. SHAW INDUSTRIES, INC. v. SCOTT.
(713 SE2d 917)

DILLARD, Judge.

In this discretionary appeal, employer Shaw Industries, Inc. appeals a ruling of the superior court, affirming the State Workers' Compensation Board's (the "Board") award of indemnity benefits in favor of Valencia Scott. Specifically, Shaw Industries contends that the superior court erred in affirming the findings of the Board and the administrative law judge ("ALJ") that Scott's inability to continue working was caused by a fictional new injury rather than a change in condition. For the reasons noted infra, we are constrained to reverse.

At the outset, we note that "[i]n reviewing a workers' compensation award, this Court must construe the evidence in the light most favorable to the party prevailing before the appellate division."[1] In addition, "[t]he findings of the State Board of Workers' Compensation, when supported by any evidence, are conclusive and binding, and neither the superior court nor this Court may substitute itself as a factfinding body in lieu of the State Board."[2] More specifically, "whether an employee's inability to continue working is caused by a fictional new accident or by a change of condition is a question of fact for the ALJ, and such a finding of fact may not be disturbed on appeal if any evidence supports it."[3] Nevertheless, "erroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law, are subject to a de novo standard of review."[4]

In the case sub judice, the record demonstrates that Valencia Scott had been employed by Shaw Industries for over 14 years. On February 16, 1996, Scott was performing her work as a carpet inspector when her right foot became caught in a carpet roller. As a result, she suffered a serious injury that required partial amputation of her foot and caused her to miss approximately ten months of work. During that time period, Scott received temporary total disability ("TTD") benefits. In January 1997, she returned to work for Shaw Industries in the company's customer service department, which enabled her to work while sitting or standing at a desk as needed. But the partial amputation, and the prosthesis Scott was required to wear as a result, altered her gait, which in turn began causing her significant problems in both knees. Consequently, in May 1997, she underwent bilateral knee surgery.

Over the next 12 years, Scott continued working in Shaw Industries's customer service department, but her knee problems and the pain associated with those problems became progressively worse. In March 2009, Scott's treating physician, who had diagnosed her bilateral knee problems as being the result of chondromalacia and osteoarthritis caused by her amputation and altered gait, recommended that she cease working briefly to alleviate her knee pain. Over the course of the next several months, Scott made several attempts to return to work, but she continued to experience significant pain in her knees and, in September 2009, once again upon her physician's recommendation, she ceased working altogether.

---

[1] *Laurens County Bd. of Educ. v. Dewberry*, 296 Ga. App. 204, 205-06 (674 SE2d 73) (2009) (footnote omitted).

[2] *Id.* at 206 (footnote omitted).

[3] *Id.* (footnote omitted).

[4] *Trax-Fax, Inc. v. Hobba*, 277 Ga. App. 464, 464 (627 SE2d 90) (2006) (citation and punctuation omitted).

Thereafter, Scott sought workers' compensation benefits. The ALJ conducted a hearing on her claim, during which Scott argued that her inability to work was the result of a fictional new injury that occurred on March 24, 2009—the date that she was first held out of work by her physician. In contesting Scott's claim, Shaw Industries argued that Scott's inability to work was the result of a change in condition, and thus, her claim was barred by the applicable statute of limitation.[5] After the hearing, the ALJ awarded benefits to Scott, finding that Scott had sustained a fictional new injury. Shaw Industries appealed to the full Board, which affirmed and adopted the ALJ's award. The company then appealed the decision to the superior court, which also affirmed the award. This discretionary appeal follows.

In its sole enumeration of error, Shaw Industries contends that the ALJ erred in ruling that Scott's disability resulted from a fictional new injury, as opposed to a change in condition, and that Scott's claim for TTD benefits was thus not barred by the applicable statute of limitation. We agree that the ALJ erred, and therefore, we are constrained to reverse the award of benefits, as well as the subsequent orders of the Board and the superior court affirming that award.

In *Central State Hospital v. James,*[6] this Court distinguished between those disabilities resulting from a change in condition and those resulting from a new accident. Specifically, we held that

[w]hen a claimant sustains an injury, *is awarded compensation,* returns to his normal and ordinary job duties, but then as a result of the wear and tear of ordinary life and the activity connected with performing his normal duties, his condition gradually deteriorates to where he cannot continue to perform his ordinary work, such facts constitute a change in condition and not a new accident. On the other hand, when a claimant is injured on the job but continues, *without an agreement or award,* to perform the duties of his employment until forced to cease work because of a gradual worsening of his condition that is at least partly attributable to his physical activity in continuing to work, such facts constitute a new accident. A new accident may result either

---

[5] OCGA § 34-9-104 (b) (providing that "any party may apply under this Code section for another decision because of a change in condition ending, decreasing, increasing, or authorizing the recovery of income benefits awarded or ordered in the prior final decision, provided . . . that at the time of application not more than two years have elapsed since the date the last payment of income benefits . . . was actually made").

[6] 147 Ga. App. 308, 309-10 (1) (248 SE2d 678) (1978).

from a gradual worsening of a pre-existing injury due to aggravation by work duties or from the occurrence of a specific job-related incident.[7]

Indeed, "a necessary factual predicate to a determination that a change in condition, rather than a new injury (or new accident), has occurred is that there has previously been an award (or equivalent) for the injury whose worsening has produced the present disability."[8]

In the order awarding Scott TTD benefits, the ALJ found that Scott's knee problems were "caused by [her] altered gait that has occurred as a result of the partial right foot amputation and knee injury and performance of her duties at work which aggravated her injury." But the ALJ, nevertheless, then found that Scott suffered a new injury and, thus, that an award of benefits was not barred by the statute of limitation. However, it is undisputed that Scott sustained her initial injury while working for Shaw Industries, was awarded workers' compensation benefits, and, after ten months, resumed her employment (albeit in a different position) for the next 12 years. Thus, the progressive aggravation of Scott's injuries, which was caused by the performance of her work duties and which ultimately resulted in her inability to work, can only be characterized as a change in condition.[9] The ALJ, therefore, erred as a matter of law in finding that Scott suffered a fictional new injury when she ceased working for Shaw Industries in March 2009, and that her claim was not barred by the statute of limitation. Accordingly, we are constrained to reverse the ALJ's order awarding Scott workers' compensation benefits, as well as the subsequent orders of the Board and the superior court affirming that award.

*Judgment reversed. Smith, P. J., and Mikell, J., concur.*

DECIDED JULY 12, 2011 — 

---

[7] *Trucks, Inc. v. Trowell*, 302 Ga. App. 488, 491 (1) (690 SE2d 880) (2010) (quoting *Cypress Cos. v. Brown*, 246 Ga. App. 804, 806-07 (542 SE2d 544) (2000)); *see also Dewberry*, 296 Ga. App. at 206; *Northbrook Property & Cas. Ins. Co. v. Babyak*, 186 Ga. App. 339, 341 (367 SE2d 567) (1988).

[8] *Dewberry*, 296 Ga. App. at 206 (punctuation and footnote omitted); *see* OCGA § 34-9-104 (a) (1) (defining "change in condition" as "a change in the wage-earning capacity, physical condition, or status of an employee or other beneficiary covered by this chapter, which change must have occurred after the date on which the wage-earning capacity, physical condition, or status of the employee or other beneficiary *was last established by award or otherwise*" (emphasis supplied)).

[9] *See, e.g., Oconee Area Home Care Servs., Inc. v. Burton*, 275 Ga. App. 784, 786-87 (621 SE2d 859) (2005) (holding that claimant's disability constituted a change in condition in light of the fact that claimant received benefits for his initial injury, returned to work, but injury gradually worsened and forced him to cease working); *James*, 147 Ga. App. at 311 (3) (same).

*Speed & Seta, J. Wallace Speed, Marion G. Waters IV*, for appellant.

*Gammon, Anderson & McFall, Bryan C. Villarreal*, for appellee.