**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 16, 2015**

# In the Court of Appeals of Georgia

A15A0405.  BARNES  v.  ROSEBURG  FOREST  PRODUCTS
COMPANY et al.

PHIPPS, Presiding Judge.

We granted Willie Barnes's application for discretionary appeal in this workers' compensation case involving a catastrophic injury. Barnes appeals the superior court's order affirming the decision of the appellate division of the State Board of Workers' Compensation (the "Board"), which had adopted the decision of the administrative law judge ("ALJ") denying Barnes's claim for recommencement of temporary total disability income benefits. Barnes contends that, contrary to the decision of the Board (as affirmed by the superior court), neither the two-year statute of limitation for change in condition claims[1] nor the one-year statute of limitation for

---

[1] See OCGA § 34-9-104 (b).

fictional new accident claims[2] barred his claim. He also cites as error the Board's failure to address his motion for attorney fees. For the reasons that follow, we reverse and remand with direction.

In resolving this appeal, we must keep in mind the various standards of review applicable in this case. . . .When reviewing awards in workers' compensation cases, both the appellate court and the superior court must construe the evidence in the light most favorable to the party prevailing before the Board. . . .The Board's decisions based on erroneous legal theories are subject to the de novo standard of review. The question of whether the superior court applied the correct legal standard in evaluating the evidence is one of law, which this court reviews de novo.[3]

Construing the evidence in the light most favorable to the party prevailing before the Board, the facts relevant to this appeal are as follows. In August 1993, Barnes was working at Georgia-Pacific Corporation's wood processing plant when his leg went through rotten flooring and he landed in an auger, causing an immediate amputation of his left leg below the knee. Georgia-Pacific and its workers'

_____

[2] See OCGA § 34-9-82.

[3] *JMJ Plumbing v. Cudihy*, 319 Ga. App. 158-159 (735 SE2d 148) (2012) (footnotes and punctuation omitted); see *Howard v. Peachbelt Health & Rehab. Ctr.*, 314 Ga. App. 319-320 (1) (723 SE2d 718) (2012) (footnote omitted).

compensation insurance servicing agent, CCMSI, accepted Barnes's claim as catastrophic[4] and began paying him temporary total disability ("TTD") income benefits. Barnes was fitted with a prosthetic leg, and he returned to work at Georgia-Pacific in January 1994. At that time, his TTD benefits were replaced with permanent partial disability ("PPD") benefits.

When Barnes was unable to perform the duties his former position required, he was transferred to a position with duties he was able to perform. Although the new duties were also difficult and caused pain, he continued working in a light duty position until 2008. Barnes's last PPD payment was issued in May 1998, as "[t]he entire [PPD] benefit ha[d] been paid." He did not receive any workers' compensation income benefits thereafter.

In 2006, while Barnes was still working in a light duty/supervisory position, Georgia-Pacific sold the plant to Roseburg Forest Products Company, which assumed Georgia-Pacific's assets and liabilities. In 2008, Roseburg Forest eliminated positions at the plant, including Barnes's supervisory position. Barnes continued working at the plant, but in a position that was more physically demanding and caused pain in and

---

[4] Pursuant to OCGA § 34-9-200.1 (g) (2), a catastrophic injury includes "[a]mputation of an arm, a hand, a foot, or a leg involving the effective loss of use of that appendage."

swelling of his injured leg. Over time, the new duties exacerbated his injury. On September 10, 2009, Roseburg Forest instituted a second round of lay-offs, this time terminating Barnes. Shortly after he was terminated, Barnes consulted CCMSI to find out whether he was eligible for a recommencement of workers' compensation benefits; he was told he was not eligible.

In August 2012, after consulting an attorney who reportedly told him he was eligible for benefits, Barnes filed with Georgia-Pacific a notice of claim to resume TTD income benefits. Asserting a 1993 date of injury, Barnes claimed that he had remained catastrophically injured since 1993 (though he had continued to work, with limitations) and that, as a catastrophically injured worker, he was entitled to receive benefits beginning on the date he no longer had a job. He also requested attorney fees and a hearing. Georgia-Pacific (as "Emp/insurer") controverted the claim, asserting that, inter alia, Barnes was no longer an employee. Later, Roseburg Forest also controverted the claim, asserting that, inter alia, the statute of limitation set out in OCGA § 34-9-104 had expired.

In November 2012, Barnes filed a separate notice of claim with Roseburg Forest and CCMSI, asserting a second theory of recovery.[5] Barnes alleged an injury date of September 11, 2009 and, citing OCGA § 34-9-82, contended that the job termination constituted a fictional new accident.

After a hearing, the ALJ denied Barnes's claim as barred by the statute of limitation periods set out in OCGA § 34-9-104 (b) and 34-9-82. The Board adopted the ALJ's ruling, and the superior court affirmed the Board's decision.

1. Barnes contends that the Board erred by finding that the two-year statute of limitation set out in OCGA § 34-9-104 (b) barred his claim. Asserting a 1993 injury date, he contends that he had experienced a change in condition when he returned to work in January 1994, and had experienced another change in condition when he was terminated in September 2009. He argues that OCGA § 34-9-261 must be interpreted as authorizing an employee whose injury has been accepted as catastrophic to assert

---

[5] An order substituting Roseburg Forest Products as employer and CCMSI as servicing agent was entered in April 2013. Georgia Conversion Primary Insurance Company had been the employer's insurer at the time of the 1993 injury. ACE American Insurance Company was the employer's insurer in 2009, when Barnes was terminated. CCMSI was the servicing agent for the insurers in 1993 and 2009. Roseburg Forest/CCMSI has filed a brief as appellee regarding the 1993 injury (change in condition). Roseburg Forest/ACE American has filed a brief as appellee regarding the 2009 injury (fictional new accident).

a claim for reinstatement of benefits when he experiences a change in condition pursuant to OCGA § 34-9-104 (a) (1), even if that change occurs more than two years after the last benefit payment was made. Barnes contends that he is being penalized for having worked, with limitations, despite his catastrophic injury. We agree that the Board erred by adopting the ALJ's ruling that the two-year statute of limitation in OCGA § 34-9-104 (b) barred Barnes's catastrophic injury claim.

OCGA § 34-9-104 (b), which addresses modification of a prior final workers' compensation decision, pertinently permits a party to apply for another decision because of a change in condition, provided that "at the time of application not more than two years have elapsed since the date the last payment of income benefits pursuant to Code Section 34-9-261 . . . was actually made." As used in OCGA § 34-9-104,

> the term "change in condition" means a change in the wage-earning capacity, physical condition, or status of an employee or other beneficiary covered by this chapter, which change must have occurred after the date on which the wage-earning capacity, physical condition, or status of the employee or other beneficiary was last established by award or otherwise.[6]

---

[6] OCGA § 34-9-104 (a).

OCGA § 34-9-261 provides:

The weekly benefits under this Code section shall be payable for a maximum of 400 weeks from the date of injury; *provided, however, in the event of a catastrophic injury . . . the weekly benefit under this Code section shall be paid until such time as the employee undergoes a change in condition for the better* as provided in [OCGA § 34-9-104 (a) (1)].[7]

Barnes's situation is one that the Workers' Compensation Act apparently did not contemplate - where an employee has returned to work with significant limitations, despite a catastrophic injury designation, and then, more than two years after the last benefit payment was issued, has tried to resume the payment of benefits after his job was eliminated.

It is undisputed that Barnes's injury was catastrophic, and that the injury continued to be catastrophic at the time of the ALJ's decision; notably, Barnes's "catastrophic" injury designation had not been removed.[8] And, in its appellate brief,

---

[7] (Emphasis supplied.)

[8] See OCGA § 34-9-200.1 (i) (in pertinent part, permitting a party to request a new determination as to the catastrophic or noncatastrophic nature of the employee's injury).

7

Roseburg Forest/CCMSI concedes that Barnes "underwent a change in condition for the worse when [he was] laid off by [his] employer[]."

As set out in OCGA § 34-9-261, the cap on weekly TTD benefits does not apply to an employee who has suffered a catastrophic injury, until he has undergone the requisite change for the better. Given the statute's cap on benefits for noncatastrophic injuries, and the absence of a cap on benefits for catastrophic injuries, it is clear that the legislature intended to treat workers who received catastrophic injuries differently from workers who were less severely injured, allowing the former to receive benefits indefinitely so long as they remain catastrophically injured.

We reiterate that "[t]he Workers' Compensation Act is a humanitarian measure that should be liberally construed to effectuate its purpose."[9] Under the circumstances, we conclude that Barnes's claim was not barred by the two-year statute of limitation set out in OCGA § 34-9-104 (b), and that the ALJ erred by ruling

---

[9] *City of Waycross v. Holmes*, 272 Ga. 488, 489 (532 SE2d 90) (2000) (citation omitted); see *Ray Bell Constr. Co. v. King*, 281 Ga. 853, 854 (642 SE2d 841) (2007); *DeKalb Collision Center v. Foster*, 254 Ga. App. 477, 482 (562 SE2d 740) (2002).

8

otherwise. Because the ALJ made an error of law, and the Board adopted that ruling, the superior court judgment affirming the Board's decision must be reversed.[10]

2. Barnes contends that the Board erred by finding that his claim based on a fictional new accident[11] was filed outside the one-year statute of limitation set out in OCGA § 34-9-82 (a). We agree with Barnes.

OCGA § 34-9-82 (a) provides:

The right to compensation shall be barred unless a claim therefor is filed within one year after injury, *except that if payment of weekly benefits has been made or remedial treatment has been furnished by the employer on account of the injury the claim may be filed within one year after the date of the last remedial treatment furnished by the employer*

---

[10] See *Renu Thrift Store v. Figueroa*, 286 Ga. App. 455, 456 (649 SE2d 528) (2007) ("erroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law, are subject to the de novo standard of review") (citation and footnote omitted).

[11] See *R. R. Donnelley v. Ogletree*, 312 Ga. App. 475, 477-479 (718 SE2d 825) (2011) (explaining that a fictional "'new accident' occurs when there is the intervention of new circumstances imposed upon the claimant," while "a [']change in condition['] occurs when the claimant's disability results from his performance of 'usual,' 'normal,' or 'ordinary' work duties"); *Central State Hosp. v. James*, 147 Ga. App. 308, 309 (1) (a) (248 SE2d 678) (1978) (in the case of a "new accident," "the one-year statute of limitation begins to run from the date the claimant was forced to cease his employment. . . . [T]his holding [is based] on the theory that the date of the 'new accident' is the date that the disability manifests itself.").

or within two years after the date of the last payment of weekly benefits.[12]

Barnes filed the notice of claim on November 30, 2012, which was within one year of the December 2011 replacement of his prosthetic leg (paid for by CCMSI). Accordingly, the "remedial treatment" exception applied and the statute of limitation did not bar the claim.[13] As with the statute of limitation issue discussed in Division 1,[14] to hold otherwise would be to penalize a claimant for having continued working (with limitations) even though he remained catastrophically injured.[15]

Notwithstanding, Roseburg Forest/ACE American contends that the provision of medical treatment in 2011 - furnished as part of the 1993 claim with the employer's previous insurer - cannot be imputed to ACE American (the second insurer) to toll the statute of limitation. The contention is without merit, because the insurer is the alter

---

[12] (Emphasis supplied.)

[13] OCGA § 34-9-82 (a).

[14] Supra.

[15] See *Aetna Casualty & Sur. Co. v. Cagle*, 106 Ga. App. 440 (126 SE2d 907) (1962).

ego of the employer under the Workers' Compensation Act.[16] That, considered in conjunction with the language of OCGA § 34-9-82 (a), makes clear that medical treatment furnished by one of the employer's insurers on behalf of that employer is medical treatment provided by the employer.

Also without merit is Roseburg/ACE American's argument that the last remedial treatment did not toll the statute of limitation in OCGA § 34-9-82 (a) because the remedial treatment was not commenced within one year of the injury or within one year of the previous treatment. The case of *Poissonnier v. Better Business Bureau of West Georgia-East Alabama*,[17] upon which Roseburg/ACE American relies, is inapposite, as it addressed the connection between an employer's failure to post a panel of physicians as required by the Act and a claimant's reliance on the "remedial treatment furnished by the employer" exception to the one-year bar.[18] Unlike in the instant case, the remedial treatment relied upon by the claimant in *Poissonnier* had not actually been furnished by the employer but was only *deemed* to

---

[16] *Anderson v. Aragual, Sanders &c.*, 163 Ga. App. 610, 612-613 (295 SE2d 750) (1982).

[17] 180 Ga. App. 588 (349 SE2d 813) (1986).

[18] Id. at 588-589.

have been so furnished because the employer had failed to post the required panel of physicians.[19] The issues before the court were different.

The statute of limitation did not bar Barnes's claim.

3. Because the ALJ's decision was based on its finding that Barnes's claim was not timely filed, the ALJ (and consequently, the Board and superior court) did not fully consider other arguments Barnes had made before the ALJ and has reiterated in this appeal (e.g., whether Barnes had experienced a change in condition or had suffered a fictional new accident; if the presumption of permanent total disability had been rebutted; and if Barnes is entitled to an award of attorney fees). Accordingly, we reverse the superior court's judgment and remand the case to the Board for consideration of said issues.[20]

*Judgment reversed and case remanded with direction. Doyle, C. J., and Boggs, J., concur.*

---

[19] Id.

[20] See generally *ABF Freight Sys. v. Presley*, 330 Ga. App. 885, 887 (769 SE2d 611) (2015) (physical precedent only), citing *Trucks, Inc. v. Trowell*, 302 Ga. App. 488, 491 (1) (690 SE2d 880) (2010); *Cho v. Mountain Sweet Water*, 322 Ga. App. 400, 402-403 (745 SE2d 663) (2013); *Stokes v. Coweta County Bd. of Education*, 313 Ga. App. 505, 507, 511 (722 SE2d 118) (2012); OCGA § 34-9-108 (b) (1) (regarding attorney fees).