A03A0987. TRENT TUBE et al. v. HURSTON.

(583 SE2d 198)

BLACKBURN, Presiding Judge.

In this discretionary appeal, employer Trent Tube and insurer Specialty Risk Services, Inc. (collectively "Trent") appeal a ruling of the superior court affirming employee Elmon David Hurston's claim for modification of workers' compensation benefits. Trent contends that the superior court erred by (1) affirming the finding of the State Board of Workers' Compensation that Hurston's claim was not barred by the applicable two-year statute of limitation and (2) failing to remand the case for findings of fact regarding Hurston's entitlement to benefits in light of the treating physician's release to return to work. For the reasons that follow, we affirm.

In the absence of legal error, the factual findings of the State Board of Workers' Compensation must be affirmed by the superior court and by the Court of Appeals when supported by any evidence in the administrative record. *Georgia-Pacific Corp. v. Wilson.*[1] However, erroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law, are subject to the de novo standard of review. *Mansfield Enterprises v. Warren.*[2]

The record shows that Hurston suffered a compensable eye injury on November 3, 1997, and Trent began paying temporary total disability ("TTD") benefits pursuant to OCGA § 34-9-261. On February 15, 1999, Hurston attempted light-duty work offered by Trent, but after two days he did not return, claiming he could not do the work because of his injury. Hurston's TTD benefits were reinstated under OCGA § 34-9-240 (b) (1), and Trent requested a hearing to determine whether Hurston had rejected suitable employment and

[14] *State v. Adams*, 186 Ga. App. 87, 88 (366 SE2d 326) (1988).

[15] See *Roberts v. State*, 242 Ga. App. 120-121 (527 SE2d 617) (2000).

[1] *Georgia-Pacific Corp. v. Wilson*, 240 Ga. App. 123, 126 (1) (522 SE2d 700) (1999).

[2] *Mansfield Enterprises v. Warren*, 154 Ga. App. 863, 864 (270 SE2d 72) (1980).

was no longer entitled to those benefits, pursuant to OCGA § 34-9-240 (a).

After the hearing, the administrative law judge ("ALJ") found that Hurston unjustifiably refused suitable employment on February 17, 1999, and was not entitled to the continuation of benefits. However, Hurston continued to receive weekly benefits pending the result of an administrative appeal. On May 18, 2000, the appellate division affirmed the ALJ's decision, and Hurston's benefits were suspended. On February 22, 2001, after subsequent judicial appeals also proved unsuccessful, Hurston attempted to accept the light-duty position that had been offered to him in 1999. Trent ignored Hurston's written inquiries and then terminated him. Hurston continued to suffer from a partial disability and was unable to find other work.

On March 14, 2001, Hurston filed a claim for modification of benefits based on an economic change in condition, namely the unavailability of the light-duty job previously offered by Trent and Hurston's inability to find other work. Hurston also requested reimbursement for prescription eyeglasses. In response, Trent raised the statute of limitation defense contained in OCGA § 34-9-104 (b), which bars modification claims made more than two years after disability benefits are last paid, arguing that the statute began to run on February 17, 1999, the date on which Hurston was no longer entitled to income benefits. However, the ALJ determined that the statute had not begun to run until May 18, 2000, the last date on which Hurston actually received a payment of income benefits. Alternatively, the ALJ found that the statute had not begun to run until either March 31, 1999, the date Hurston received a $325 late payment because he was underpaid for the previous five weeks, or on April 16, 1999, the date Hurston received a penalty payment pursuant to OCGA § 34-9-221 (e). After determining the claim was not procedurally barred, the ALJ reinstated Hurston's TTD benefits as of February 22, 2001. The award was affirmed by the appellate division, which adopted the ALJ's findings and added that Hurston's claim was also not barred because it was filed "within a year after the award became final," when Hurston's appeals were exhausted. The superior court affirmed the appellate division, and Trent appeals that ruling.

1. The superior court did not err in affirming the ALJ's legal conclusion that the statute of limitation had not begun to run until May 18, 2000. OCGA § 34-9-104 (b), "Modification of prior final decision," reads in pertinent part:

> [A]ny party may apply under this Code section for another decision because of a change in condition ending, decreasing, increasing, or authorizing the recovery of income benefits

> awarded or ordered in the prior final decision, provided . . . . that at the time of application not more than two years have elapsed since the date the last payment of income benefits pursuant to Code Section 34-9-261 or 34-9-262 was actually made under this chapter.

The statute of limitation does not begin to run until an employee receives his last payment authorized by OCGA § 34-9-261 or § 34-9-262, whether he is later determined to be entitled to them or not. Absent clear evidence of a contrary intent, a statute's "words should be assigned their ordinary, logical, and common meaning," *Curlee v. Mock Enterprises*,[3] and courts must avoid constructions that render part of a statute mere surplusage. *City of Buchanan v. Pope*.[4] Reading into the statute a requirement that those payments would "not count" if it was later determined the employee was not entitled to them would unnecessarily complicate a facially straightforward statute. Furthermore, such an interpretation would render the word "actually" mere surplusage.

Furthermore, the 1990 amendment to the statute illustrates the correctness of this interpretation. Under the pre-1990 version of OCGA § 34-9-104 (b), modification could be sought if "at the time of application not more than two years have elapsed since the date of final payment of income benefits *due* under this chapter." (Emphasis supplied.) The amendment substituted the words "payment of income benefits . . . actually made" for "payment of income benefits due," simplifying a statute that had become increasingly complex in its application. See *Holt's Bakery v. Hutchinson*[5] (reading *"potentially* due" into statute's text). What matters now is the last date benefits were actually paid, not whether the employee turns out to have been due those benefits. Here, the last payment was indisputably "actually made" to Hurston on May 18, 2000, less than two years before he filed his change in condition claim.

Trent further argues that these disputed payments are still not income benefits paid "pursuant to Code Section 34-9-261 or 34-9-262," but rather are payments made pursuant to OCGA § 34-9-240. However, Trent misunderstands the procedural nature of OCGA § 34-9-240 (b) (1), which provides that if an injured employee unsuccessfully attempts a light-duty job, his weekly benefits must be reinstated until the employer proves that he has refused suitable employment. The benefits themselves, while required to be paid by OCGA § 34-9-240 (b), are still the same benefits substantively authorized by

---

[3] *Curlee v. Mock Enterprises*, 173 Ga. App. 594, 600 (327 SE2d 736) (1985).
[4] *City of Buchanan v. Pope*, 222 Ga. App. 716, 717 (476 SE2d 53) (1996).
[5] *Holt's Bakery v. Hutchinson*, 177 Ga. App. 154 (338 SE2d 742) (1985).

OCGA § 34-9-261 or § 34-9-262. Here, OCGA § 34-9-240 (b) required Trent to reinstate benefits pursuant to OCGA § 34-9-261, until Hurston was determined by OCGA § 34-9-240 (a) not to be entitled to them. The superior court correctly affirmed the ALJ's ruling that the statute of limitation had not begun to run until May 18, 2000, the last date on which income benefits were actually paid.

The ALJ also determined that a late payment and penalty payment made on March 31 and April 16, 1999, respectively, also postponed the running of the statute of limitation. These payments were based on underpayments of the same TTD benefits that we have determined to be "actual payments" for OCGA § 34-9-104 (b) purposes. Clearly, the late payment itself is an income benefit actually paid, for the same reasons already discussed. As for the penalty, OCGA § 34-9-221 (e) provides that if "any income benefits payable without an award are not paid when due, there shall be added to the accrued income benefits an amount equal to 15 percent thereof, which shall be paid at the same time as, but in addition to, the accrued income benefits." The statute by its own terms adds the penalty *to* the income benefits, and requires them to be paid *with* the income benefits. We see no reason why these penalty payments should be separated and treated differently from the income benefits from which they arose for statute of limitation purposes. The ruling of the appellate division and superior court was correct.

Trent also contends the appellate division erred by ruling that Hurston's change in condition claim was not barred because he filed it less than a year after his award became final. The appellate division did not cite a legal basis for this statement, neither did the superior court or the parties, and we have found none. However, because the ALJ's reason for its ruling was correct, and the superior court affirmed that ruling, the error, if any, was harmless. "A ruling right for any reason will be affirmed." *Union Planters Nat. Bank v. Crook.*[6]

2. Trent enumerates as error the superior court's failure to remand to the appellate division for findings of fact in light of Hurston's release to return to work with no restrictions by Dr. Hamilton, Hurston's authorized treating physician. Trent argues that benefits should have been cut off due to Hurston's change in condition for the better, and the ALJ's failure to address this evidence required a remand. This contention fails for both procedural and substantive reasons.

We first note that the hearing was requested by Hurston, not Trent, due to an economic (not physical) change in condition based on

---

[6] *Union Planters Nat. Bank v. Crook*, 225 Ga. App. 578, 582 (1) (484 SE2d 327) (1997).

Trent's refusal to reemploy Hurston. See *Risner v. Bulk Equip. Mfg.*[7] (benefits may be allowed following termination if employee shows inability to obtain other employment due to injury). The results of Dr. Hamilton's examination were offered to refute Hurston's claim that his need for glasses arose out of the injury and, purportedly, as evidence that his job search was not conscientious. Trent never raised or argued the issue of whether Hurston's condition had improved, and therefore the ALJ and appellate division were not required to rule on it. *Ga. Power Co. v. Safford.*[8]

Nevertheless, the ALJ did rule on the issue when he found that "Hurston has continued to have physical restrictions as a result of the injury to his right eye." "[W]hile there is authority for remanding a case to the board based upon uncertainty that all the evidence had been considered[,] the mere failure to refer to all the evidence in the findings of fact does not establish that the board did not consider the evidence in its review of the matter." (Citations and punctuation omitted.) *Roberson v. Englehard Corp.*[9] Here, the ALJ explicitly stated that he considered all the evidence, and therefore a remand is not authorized. Id. at 676. Furthermore, because some of that evidence, including evaluations by other doctors and testimony by Hurston, supports the ALJ's finding, that finding will not be disturbed on appeal.

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

DECIDED JUNE 5, 2003.

*Sartain, McKay & Crowell, Perry M. Sartain*, for appellants.
*Smith, Wallis & Scott, Kenneth A. Smith*, for appellee.

[7] *Risner v. Bulk Equip. Mfg.*, 229 Ga. App. 529 (494 SE2d 304) (1997).
[8] *Ga. Power Co. v. Safford*, 171 Ga. App. 387 (319 SE2d 537) (1984).
[9] *Roberson v. Englehard Corp.*, 190 Ga. App. 674, 675 (379 SE2d 524) (1989).