## A11A1170. R. R. DONNELLEY et al. v. OGLETREE.
(718 SE2d 825)

MILLER, Presiding Judge.

In this workers' compensation action, claimant Tedral Ogletree filed a claim for reinstatement of medical and temporary total disability ("TTD") income benefits from his former employer, R. R. Donnelley,[1] and its insurer, AIG International Insurance Company c/o Gallagher Bassett Services (collectively, "R. R. Donnelley" or "the employer"). Ogletree claimed that he sustained a compensable fictional new accident arising out of and in the course of his employment with R. R. Donnelley, and that he was unable to obtain suitable subsequent employment due to the aggravation of his injury. Following an evidentiary hearing, a State Board of Workers' Compensation administrative law judge ("ALJ") issued an award in Ogletree's favor, finding that Ogletree had sustained a fictional new accident and that Ogletree had performed a diligent, but unsuccessful, search for suitable employment, as required under *Maloney v. Gordon County Farms*, 265 Ga. 825 (462 SE2d 606) (1995). The Board's appellate division affirmed the ALJ's findings as to a fictional new accident, but reversed the award of TTD benefits based upon its finding that Ogletree had not performed a diligent job search. On further appeal, the superior court affirmed the Board's finding of a fictional new accident. The superior court, however, reversed the Board's finding that Ogletree had not performed a diligent job search and reinstated the ALJ's award. We granted R. R. Donnelley's application for discretionary appeal. For the reasons that follow, we affirm the superior court's decision.

> On appeal of an award or denial of workers' compensation benefits, the superior court may not substitute its findings for the appellate division's findings of fact[.] . . . Even if the appellate division's reweighing of the evidence resulted in a conclusion different from that of the ALJ, the superior court must affirm the appellate division if there is any evidence to support its conclusion.

(Punctuation and footnotes omitted.) *Medders v. Smith*, 245 Ga. App. 323, 325 (1) (537 SE2d 153) (2000). However, the appellate division's decisions based on erroneous legal theories are subject to the de novo standard of review. *Trent Tube v. Hurston*, 261 Ga. App.

---

[1] During the course of Ogletree's employment, the employer R. R. Donnelley changed ownership and was formerly known as IPD Printing Company and Wallace Computer Services, Inc. The employer's former insurer was American Casualty Company of Reading c/o CNA Claimplus.

525 (583 SE2d 198) (2003).

The record evidence shows that Ogletree began working for the employer in March 1997 as an assistant pressman. Ogletree's duties required repetitive lifting of heavy stock, as well as bending, stretching, and pulling. On October 10, 2002, Ogletree suffered a work-related injury to his neck and upper extremities. Ogletree underwent carpal tunnel surgery and received wage, medical, and permanent partial disability ("PPD") benefits.

Ogletree returned to work in June 2003 on a light-duty basis with permanent restrictions from his treating physician of no lifting, pushing, or pulling more than 15 pounds. He then began to work in the Fulfillment Department, which required him to bend, stack, and lift boxes. Some of the boxes that Ogletree lifted weighed as much as 30 pounds, and he exceeded his work restrictions 40% of the time. Ogletree complained to his supervisors of increasing pain in his upper extremities as he continued to work.

Ogletree was relocated to the Quality Control Department. His duties in that department required him to lift panels between 15 and 30 pounds, which exceeded his permanent work restrictions. Ogletree stated that, as he continued trying to perform his work duties, his condition worsened. Ogletree again complained to his supervisors about his increasing pain, but no one modified his duties. Ogletree received a poor performance review because he "was not moving fast enough." Ogletree testified that his performance was slow due to the injury and pain in his neck and back, the numbness in his arm, and sharp pains in his hands.

Ogletree subsequently began working in the DocuTech Department. His duties included stuffing envelopes, placing the envelopes into boxes, and loading the boxes into carts. Some of the boxes that Ogletree lifted, pulled, and pushed weighed between 50 and 60 pounds. Again, Ogletree complained to his supervisors regarding the pain he felt while working. He stated that the pain started in his neck, extended down his arm and hand, and moved down his lower back into his leg.

Medical records from Ogletree's treating physicians documented Ogletree's injuries. On July 3, 2007, Ogletree underwent an MRI, which revealed that Ogletree was suffering from "multi[-]level degenerative disc disease. The discs [were] partially collapsed at all of the C3-4, C4-5, and C6-7 levels. Marginal osteophytes [were] formed at those levels as well, and . . . there [was] multi[-]level spinal stenosis, and some cord compression." In December 2007, Ogletree's physician noted that the results of a CT myelogram showed that Ogletree had a vertebral artery anomaly at C4, multi-level spondylosis and disc degeneration, and foraminal stenosis at C3-4 and C6-7.

On April 17, 2008, Ogletree was laid off as a result of the

employer's reduced workload and the elimination of the DocuTech Department. Following his layoff, Ogletree began searching for work using the internet, newspaper, and the Georgia Department of Labor's website. Ogletree testified that he applied for quality control and government jobs that were within his physical restrictions, and he listed approximately 24 jobs for which he submitted applications. Some of the prospective employers did not respond to his applications, and about half of the prospective employers responded via e-mail advising that the positions had been filled by other applicants. Ogletree did not have any interviews and did not personally visit any potential employers.

In October 2008, Ogletree underwent a lumbar fusion surgery. He filed a claim for TTD benefits for the period from April 17, 2008 and continuing based upon an alleged "fictional new accident" that was manifested at the time of his layoff.

The Board's ALJ entered an award and findings in Ogletree's favor, but the appellate division reversed, in part, the ALJ's findings. Upon further review, the superior court reversed the appellate division's decision in part and reinstated the ALJ's award.

1. R. R. Donnelley contends that the superior court erred in affirming the Board's finding that Ogletree had sustained a fictional new accident on April 17, 2008. It contends that Ogletree instead had a change in condition. We discern no error.

In *Central State Hosp. v. James*, 147 Ga. App. 308, 309-310 (1) (a)-(c) (248 SE2d 678) (1978), this Court described three situations that have evolved in distinguishing between a new injury or a change in condition:[2]

> (a) One instance is where the claimant is injured on the job but continues to perform the duties of his employment until such time that he is forced to cease work because of the gradual worsening of his condition which was at least partly attributable to his physical activity in continuing to work subsequent to his injury. Our courts have held that the one-year statute of limitation begins to run from the date the claimant was forced to cease his employment. They base

---

[2] The issue of whether Ogletree suffered a "new accident" or a change in condition is pertinent to the determination of whether his claim was time-barred and whether the new insurer, AIG, is liable for payment of the claim. See OCGA § 34-9-82 (a) ("The right to compensation shall be barred unless a claim therefore is filed within one year after injury, . . . one year after the date of the last remedial treatment furnished by the employer[,] or within two years after the date of the last payment of weekly benefits."); *Ga. Pacific Corp. v. Cross*, 275 Ga. App. 664, 664-665 (1), (2) (621 SE2d 586) (2005). Ogletree filed his notice of claim for the April 17, 2008 "new accident" on December 17, 2008, within the required statutory deadline.

this holding on the theory that the date of the "new accident" is the date that the disability manifests itself. *Mallory v. American Cas. Co.*, 114 Ga. App. 641 (152 SE2d 592) [(1966)]; *Blackwell v. Liberty Mut. Ins. Co.*, 230 Ga. 174 (196 SE2d 129) [(1973)].

. . .

(b) A second example is where the claimant sustains a second accident as the result of a specific job-related incident which aggravates a pre-existing condition which resulted from a prior accident. In these circumstances the second accident which aggravated the pre-existing condition is a new injury, if the second accident at least partially precipitated the claimant's disability. *Aetna Cas. &c. Co. v. Cagle*, 106 Ga. App. 440 (126 SE2d 907) [(1962)]. This is true whether the claimant is immediately disabled or if he continues to work after the second accident and his condition gradually worsens until he is forced to cease his employment. *Pacific Employers Ins. Co. v. Ivey*, 118 Ga. App. 299 (163 SE2d 435) [(1968)].

. . .

(c) A third situation is where the claimant sustains an injury and is awarded compensation during his period of disability. Subsequent thereto he returns to his employment performing his *normal duties or ordinary work*. Then as a result of the wear and tear of *ordinary* life and the activity connected with performing his *normal* duties and not because of a specific job-related incident his condition gradually worsens to the point that he can no longer continue to perform his ordinary work. This gradual worsening or deterioration would constitute a change in his condition and not a new accident. *St. Paul Fire &c. Ins. Co. v. Hughes*, 125 Ga. App. 328 (187 SE2d 551) [(1972)]; *Garner v. Atlantic Building Systems, Inc.*, 142 Ga. App. 517 (236 SE2d 183) [(1977)].

(Punctuation omitted; emphasis supplied.) *James*, supra, 147 Ga. App. at 309-310 (1) (a)-(c). We have further ruled that a specific incident is not a prerequisite to a finding of a new accident based upon an aggravation of a pre-existing injury. See *Beers Constr. Co. v. Stephens*, 162 Ga. App. 87, 91 (2) (290 SE2d 181) (1982). A "new accident" occurs when there is the intervention of new circumstances imposed upon the claimant. See *Certain v. U. S. Fidelity & Guaranty Co.*, 153 Ga. App. 571, 573 (266 SE2d 263) (1980). Regardless of whether the claimant has claims against a single employer or against two different employers, the analysis and

application of the foregoing principles are the same. See *Beers Constr. Co.*, supra, 162 Ga. App. at 89 (2).

Here, the ALJ, the Board's appellate division, and the superior court found that the preponderance of the competent and credible evidence established that Ogletree had sustained a fictional "new accident" on April 17, 2008, the date that he was laid off and ceased to work. The ALJ specifically found that Ogletree had sustained an on-the-job injury on October 10, 2002 and thereafter experienced a gradual worsening of his condition as he continued to perform light-duty work that exceeded his physical restrictions. The evidence supported these findings.

We recognize that the circumstances presented in this case do not fall squarely within either of the three situations described in *James*, supra, 147 Ga. App. at 309-310 (1) (a)-(c). Notably, however, the situations described in *James* were not meant to be exclusive; rather, they were the situations "which most frequently occur" in the workers' compensation context. Id. at 309 (1). Based upon the record evidence, the Board was authorized to find that the circumstances in this case were most similar to the first situation described in *James* and that Ogletree sustained a "new accident" since his physical activity in continuing to work seriously aggravated his condition. See *Ga. Pacific Corp. v. Cross*, 275 Ga. App. 664, 664-665 (1) (621 SE2d 586) (2005); *Beers Constr. Co.*, supra, 162 Ga. App. at 89-90 (2); *James*, supra, 147 Ga. App. at 309 (1) (a).

Contrary to R. R. Donnelley's arguments, the evidence in this case did not require a finding that Ogletree sustained a change in condition. As noted in *James*, supra, 147 Ga. App. at 309 (1) (c), and *Beers Constr. Co.*, supra, 162 Ga. App. at 89-90 (2), a change in condition occurs when the claimant's disability results from his performance of "usual," "normal," or "ordinary" work duties. In contrast, a "new accident" occurs when there is the intervention of new circumstances imposed upon the claimant. See *Certain*, 153 Ga. App. at 573. When Ogletree returned to work after his initial work injury, he was no longer performing normal or ordinary duties. The ALJ found that Ogletree was performing under new circumstances that were more strenuous and exceeded his light duty work restrictions. Therefore, the superior court properly affirmed the Board's determination that a "new accident," rather than a change in condition, occurred. See *Beers Constr. Co.*, supra, 162 Ga. App. at 89-90 (2); *Certain*, 153 Ga. App. at 573-574.

The Board was further authorized to conclude that Ogletree's "new accident" date was April 17, 2008, when he was laid off and

ceased to work.[3] The date of the "new accident" is deemed to be when the disability manifests itself. See *Mallory*, supra, 114 Ga. App. at 643 (4); *Blackwell*, supra, 230 Ga. at 176. When a claimant attempts to continue working even though he is injured, the disability may manifest itself when he is forced to stop working. See *Ga. Pacific Corp.*, supra, 275 Ga. App. at 665 (2); *United Parcel Svc. v. Culpepper*, 219 Ga. App. 534, 535 (465 SE2d 709) (1995). "The purpose of this rule is to avoid penalizing a claimant who attempted to continue working even though he was injured to some extent." (Citation and punctuation omitted.) *Ga. Pacific Corp.*, supra, 275 Ga. App. at 665 (2). The disability may also manifest itself when the claimant is unable to obtain suitable employment elsewhere as a result of the injury. See, e.g., *Maloney v. Gordon County Farms*, 265 Ga. 825, 826-827 (462 SE2d 606) (1995). Here, the evidence supported a finding that Ogletree continued trying to work even though he was injured and that he was unable to find suitable employment thereafter in light of his condition and restrictions. The Board therefore was authorized to find that the disability manifested itself when he ceased working on April 17, 2008. See *Ga. Pacific Corp.*, supra, 275 Ga. App. at 665 (2). See, e.g., *Maloney*, supra, 265 Ga. at 826-827.

2. R. R. Donnelley further contends that the superior court erred in reversing the Board's finding that Ogletree had not performed a diligent job search under the *Maloney* standard. We disagree.

Under *Maloney*, supra, 265 Ga. at 828, a claimant may receive workers' compensation benefits if he establishes by a preponderance of the evidence that he

> [(i)] suffered a loss of earning power as a result of a compensable work-related injury; [(ii)] continues to suffer physical limitations attributable to that injury; and [(iii)] *has made a diligent, but unsuccessful effort to secure suitable employment following termination.* Once evidence is offered in support of the foregoing, the board may in its discretion draw reasonable inferences from that evidence that despite the claimant's good faith efforts, his or her inability to obtain suitable employment was proximately caused by the continuing disability.

(Punctuation omitted; emphasis supplied.) Id.

R. R. Donnelley's claim of error pertains to the third element

---

[3] The fact that Ogletree was laid off from his employment with R. R. Donnelley does not preclude his entitlement to benefits. See *King v. Piedmont-Warner Dev.*, 177 Ga. App. 176 (338 SE2d 758) (1985).

under *Maloney* requiring Ogletree to show that he made a diligent effort to secure suitable employment following his injury and layoff. The undisputed evidence established that after being laid off, Ogletree searched for work using the internet, newspaper, and the Georgia Department of Labor's website. He applied for approximately 24 jobs, but was unsuccessful in his efforts to secure suitable employment. Although the ALJ found that Ogletree had satisfied his burden of proof under the *Maloney* standard based upon the evidence, the Board's appellate division reversed and concluded that Ogletree failed to establish a diligent job search since he did not have any interviews and did not personally visit any potential employers. The superior court reversed the decision of the appellate division in this regard, ruling that the appellate division relied upon an erroneous legal theory in reaching its conclusion. We agree.

As previously stated, no deference is owed to the appellate division's conclusions that are based upon an erroneous legal theory. See *Trent Tube*, supra, 261 Ga. App. at 525. When the Board's decisions are based upon an erroneous legal theory, we review the issue de novo. Id. As noted by the superior court, the appellate division's decision requiring Ogletree to secure interviews and in-person site visits with the prospective employers imposed an additional burden on Ogletree beyond what is required under *Maloney*. Significantly, Ogletree gave uncontroverted testimony that he followed the Georgia Department of Labor's instructions during his job search. Ogletree, as an applicant, did not control the hiring process. There was no evidence reflecting that Ogletree, rather than the prospective employers, controlled whether he was extended opportunities for interviews or in-person site visits.

In *Maloney*, the Court overruled cases that imposed an additional burden on the claimant to prove the reasons why he or she was not hired by a prospective employer, noting that such requirement created an often impossible burden on the claimant in contravention of the liberal interpretation to be given to the Workers' Compensation Act. See *Maloney*, supra, 265 Ga. at 827-828. Since the appellate division's decision similarly imposed an additional burden upon Ogletree with respect to matters that were beyond his control and inconsistent with the instructions that he was given during the hiring process, its decision was erroneous. See, e.g., id. The decision, therefore, was properly reversed.

3. Lastly, R. R. Donnelley argues that the superior court erred in affirming the Board's finding that Ogletree had suffered a compensable lower back injury since there was no notice that Ogletree was asserting such a claim. Again, no error has been shown.

"Under the Workers' Compensation Act[,] the employer is entitled to notice and an opportunity to be heard prior to being

required to pay benefits." (Citation and punctuation omitted.) *Cypress Ins. Co. v. Duncan*, 281 Ga. App. 469, 472 (4) (636 SE2d 159) (2006); *Holliday v. Jacky Jones Lincoln-Mercury*, 251 Ga. App. 493, 495 (1) (554 SE2d 286) (2001). R. R. Donnelley, however, has not shown that the notice requirement was breached in this case. Ogletree's notice of claim and request for a hearing gave notice that he was seeking medical and TTD benefits as a result of the October 10, 2002 and April 17, 2008 accident dates. The notice generally listed "Multiple Body Parts (Including Body Systems and Body Parts)" as being the body parts injured, and otherwise specified that Ogletree's neck and bilateral upper extremities were the injured body parts. At the hearing, Ogletree testified without objection that his injuries included his lower back. Significantly, R. R. Donnelley's own post-hearing brief submitted to the ALJ made reference to the fact that "Ogletree reported increased symptoms, including pain in his lower back." In light of this evidence, R. R. Donnelley's claim that it lacked notice and an opportunity to be heard regarding the lower back injury is without merit. Compare *Cypress Ins. Co.*, supra, 281 Ga. App. at 472 (4) (concluding that the claimant was not entitled to an award of permanent partial disability benefits since that issue was not raised by either party); *Holliday*, supra, 251 Ga. App. at 495-496 (1) (concluding that the claimant was not entitled to an award of permanent partial disability benefits since there was no clear indication that such issue was being raised).

*Judgment affirmed. Ellington, C. J., and Doyle, J., concur.*

DECIDED OCTOBER 20, 2011 —
RECONSIDERATION DENIED NOVEMBER 10, 2011 —

*Swift, Currie, McGhee & Hiers, Douglas L. Clayton*, for appellants.

*Morgan & Morgan, Ronald C. Conner, Kenneth M. Brock*, for appellee.