**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 13, 2012**

# In the Court of Appeals of Georgia

A12A1067. EVERGREEN PACKAGING, INC. et al. v. PRATHER.

DILLARD, Judge.

Larry T. Prather sought workers' compensation benefits from his employer, Evergreen Packaging, Inc., claiming that he injured his back at work. An administrative-law judge (the "ALJ") found that Prather suffered a compensable injury and the superior court affirmed the award. Following our grant of their application for discretionary appeal, Evergreen Packaging and servicing agent Gallagher Bassett Services (collectively, "Evergreen") contend that Prather sustained a change in condition to an injury he suffered in 2002, for which he received income and medical benefits, and that Prather's claim was therefore barred by the statute of limitations. Because we conclude that there was some evidence to support the ALJ's finding (as adopted by the Board) that Prather suffered a new injury, we affirm.

The record reflects that Evergreen manufactures milk and juice cartons. Prather began employment with Evergreen's predecessor in 1974. In February 2002, Prather was working as a warehouseman loading trucks when he injured his back operating a forklift and was not able to work for a period of time. As a result of this injury, Evergreen paid Prather temporary total disability income benefits for over five weeks and also provided him with medical treatment.

After Prather returned to work with Evergreen, he applied for and was granted a job change to the position of "plate maker" in 2005 or 2006. As a plate maker, Prather made plates for use in Evergreen's printing presses and cleaned them after the process was completed. As Prather explained below, this job required him to "gather[] materials, cut it up, . . . measure it out, put it on [the] exposure table and burn it and wash it out." He also handled the plates, which weighed between fifteen to twenty pounds for a set of four. The plate-making position also required that Prather place the plates in numbered bins, which required bending over all the way to the floor and reaching up over his head. According to Prather, his new position also required lifting boxes weighing between 30 and 50 pounds.

The warehouseman position, in which Prather had been previously employed, and the new plate-maker position were, according to Prather, "totally different." The

2

warehouseman job involved use of a "lift," which constantly bounced, and Prather attributed his initial injury to "being stuck on an older model" with a flat spot on a tire. The material that Prather was required to lift in the course of the warehouseman job was, however, heavier than the lifting required in the plate-maker position.

According to Prather, after returning to work, his back—which bothered him from "day one"—got progressively worse. Prather also testified that although the pain got worse and worse, he was unable to identify anything "in [his] mind that [he] actually felt that [he] hurt something." Regardless, Prather missed a week of work in 2007 due to his back condition.

During Prather's last two years of employment, Evergreen bought a new plate table which required him to bend over farther in performing his duties. Prather testified that "with the new table . . . bending a little bit further over . . . made [his] back] worse." During the last few months of work, he began experiencing a new problem, which he described as "a numbing feeling like it was going to sleep down to my foot."

On February 3, 2010, Prather sought treatment from Dr. Ericksen, a chiropractor, complaining of back and hip pain radiating down his leg. Prather returned to Ericksen for treatment four more times that February. On February 26,

2010, Prather was experiencing pain from his back, down his leg, and into his foot, accompanied by tingling and numbness. Prather testified that the pain he was experiencing was worse and a little more intense than the pain he experienced in 2002.

On March 1, 2010, Dr. Ericksen recommended that Prather cease working pending further evaluation. According to the doctor's work-limitation report, "[d]ue to previous history of degenerative disc disease [Prather] should remain out of work until further evaluation can be performed." Prather was evaluated by another chiropractor, Dr. Cook, on March 11, 2010. According to Dr. Cook's notes, Prather had numerous back-related problems, and his "condition is an exacerbation of an old injury [and the exacerbation] occurred on 03/01/2010 due to work related activity. " Dr. Cook likewise instructed Prather not to work for a period of time.

Prather then underwent an MRI on March 15, 2010, with his MRI from 2005 being used for comparative purposes. The radiologist's impression was that, compared to the earlier report, the new MRI showed an increase in the extent of disc extrusion and an increase in stenosis. The 2010 report also noted an annular tear, which the ALJ found was "not present previously."

Prather continued regular treatment with Dr. Cook. In his reports, Dr. Cook repeatedly noted: "This injury was caused by work related activity." On July 1, 2010, Prather was treated by Dr. Casazza, MD, who diagnosed Prather with a lumbar-disc displacement and gave him an epidural injection. On July 2, 2010, Dr. Cook opined that Prather's back condition was work-related and that Prather could not work for the forseeable future.

Thereafter, Prather sought workers' compensation benefits based on a claim that he injured his low back on February 26, 2010. Following a hearing, the ALJ found that Prather's back condition was related to his position as a plate maker with Evergreen. Specifically, the ALJ found that after Evergreen purchased a new plate table, "the employee was required to bend more to perform his duties, and this activity over time aggravated his pre-existing back condition." Accordingly, the ALJ found that Prather was entitled to temporary total disability benefits from the time Prather ceased work on March 1, 2010, on the theory that Prather suffered an aggravation of his pre-existing injury while working for Evergreen. Subsequently, Evergreen appealed to the Appellate Division of the State Board of Workers' Compensation, which adopted the ALJ's award. Evergreen then appealed to the

5

superior court, which affirmed the Appellate Division. Finally, Evergreen filed an application for a discretionary appeal, which this Court granted.

On appeal, Evergreen argues that the ALJ's holding is erroneous because Prather suffered a change in condition and, as a matter of law, was not entitled to a new date of accident. Rather, Evergreen contends, Prather's claim is barred by the statute of limitations.[1] We disagree.

In reviewing a workers' compensation award, this Court must construe the evidence in "the light most favorable to the party prevailing before the appellate division."[2] Further, the findings of the State Board of Workers' Compensation, when supported by any evidence, are "conclusive and binding, and neither the superior court nor this Court may substitute itself as a factfinding body in lieu of the State

---

[1] *See* OCGA § 34-9-104 (b) ("[a]ny party may apply under this Code section for another decision because of a change in condition ending, decreasing, increasing, or authorizing the recovery of income benefits awarded or ordered in the prior final decision, provided . . . that at the time of application not more than two years have elapsed since the date the last payment of income benefits . . . was actually made . . . ."). A case progress report indicates that Prather would have last received temporary total disability benefits in early 2004.

[2] *Laurens County Bd. of Educ. v. Dewberry*, 296 Ga. App. 204, 205-06 (674 SE2d 73) (2009).

Board."[3] As we have previously explained, "[w]hether an employee's inability to continue working has been caused by a new accident or a change in condition is a question of fact for the ALJ."[4] Nevertheless, we review *de novo* "erroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law."[5]

In *Central State Hospital v. James*,[6] this Court provided guidance for determining whether a claimant's disability is the result of a new injury or a change in condition.[7] One situation

---

[3] *Id.*

[4] *Oconee Area Home Care Servs. v. Burton*, 275 Ga. App. 784, 785 (621 SE2d 859) (2005) (punctuation omitted).

[5] *Trax-Fax, Inc. v. Hobba*, 277 Ga. App. 464, 464 (627 SE2d 90) (2006) (citation and punctuation omitted).

[6] 147 Ga. App. 308 (248 SE2d 678) (1978). As we have explained, however, "the situations described in [*Central State Hospital*] were not meant to be exclusive; rather, they were the situations which most frequently occur in the workers' compensation context." *R.R. Donnelley v. Ogletree,* 312 Ga. App. 475, 479 (1) (718 SE2d 825) (2011) (punctuation omitted).

[7] OCGA § 34-9-104 (a) (1) defines "change in condition" as "a change in the wage-earning capacity, physical condition, or status of an employee or other beneficiary covered by this chapter, which change must have occurred after the date on which the wage-earning capacity, physical condition, or status of the employee or other beneficiary was last established by award or otherwise."

is where the claimant sustains an injury and is awarded compensation during his period of disability. Subsequent thereto he returns to his employment performing his normal duties or ordinary work. Then as a result of the wear and tear of ordinary life and the activity connected with performing his normal duties and not because of a specific job-related incident his condition gradually worsens to the point that he can no longer continue to perform his ordinary work. This gradual worsening or deterioration would constitute a change in his condition and not a new accident.[8]

Evergreen contends that the foregoing describes exactly what happened in this case, and that Prather, therefore, suffered a change in condition as a matter of law. We disagree.

As this Court has previously explained, subsequent work "such as independently to aggravate the condition" may constitute a new injury in certain cases.[9] Specifically, we have noted that where there is no actual new accident,

---

[8] *Central State Hospital*, 147 Ga. App. at 309-10 (1) (c).

[9] *Beers Constr. Co. v. Stephens*, 162 Ga. App. 87, 91 (2) (290 SE2d 181) (1982); *see* OCGA § 34-9-1 (4) (injury includes "the aggravation of a preexisting condition by accident arising out of and in the course of employment"); *R.R. Donnelly*, 312 Ga. App. at 478 (1) (a) (finding "that a specific incident is not a prerequisite to a finding of a new accident based upon an aggravation of a pre-existing injury"). *Compare St. Paul Fire & Marine Ins. Co. v. Hughes*, 125 Ga. App. 328, 330 (187 SE2d 551) (1972) (holding that "even if the wear and tear of ordinary life or ordinary work to some extent aggravates a pre-existing infirmity, when that

"ordinarily the distinguishing feature that will characterize the disability as either a 'change of condition' or a 'new accident' is the intervention of new circumstances."[10]

Here, the evidence indisputably shows that Prather suffered a back injury which progressed over time and that there was no specifically identifiable accident which injured Prather after he suffered a compensable injury in 2002. Thus, the evidence might have allowed the ALJ to conclude that Prather's condition gradually worsened due to normal working conditions. But the evidence presented below also indicated that Prather suffered an additional injury, as evinced by the 2010 MRI showing not only greater disc extrusion but also *a new tear*; that Prather performed different but still physically demanding work after returning from his prior disability; and that his condition worsened when the scope of his work changed.

---

infirmity itself, stemming from the original trauma, continues to worsen, the point where the employee is no longer able to continue his work is not a *new* accident but is a change of physical and economic condition").

[10] *Certain v. United States Fidelity & Guaranty Co.*, 153 Ga. App. 571, 573 (266 SE2d 263) (1980). We have applied this principle when an employee was injured while working for one employee and then worked for a second employer, as well as when an employer was injured, received benefits, and then returned to work for the same employer. *See R.R. Donnelly*, 312 Ga. App. at 478-79 (1).

Evergreen argues that it is nevertheless important to note that Prather returned to work in a lighter-duty position.[11] Assuming without deciding that the performance of plate-making duties by Prather constituted normal or ordinary work when he returned to work with Evergreen, the ALJ placed its ruling in the context of Evergreen's purchase of a new work table and its finding that Prather was thereafter required to "bend more to perform his duties." Under these particular circumstances, the ALJ was not required, as a matter of law, to conclude that Prather suffered a gradual worsening or deterioration due to "the wear and tear of ordinary life and the activity connected with performing his *normal duties*."[12] Indeed, there is at least "a scintilla of evidence to support a finding" that Prather suffered a *new injury* because

---

[11] *See Carey Hilliard's Restaurants, Inc. v. Cesaroni*, 179 Ga. App. 656, 657 (347 SE2d 305) (1986) (finding that, to establish a new injury, "appellants would have had to present evidence showing that the work appellee performed on his new job was more strenuous than that performed on his old job"); *accord Hampton v. Howard Baer, Inc.*, 172 Ga. App. 513, 514 (1) (323 SE2d 701) (1984). *Compare Beers Constr. Co.*, 162 Ga. App. at 90-91 (2) (finding that disability is not presumed the result of wear and tear of ordinary life in connection with performance of normal duties in the case of: work that independently aggravates the employee's condition; work beyond usual, ordinary, or normal limits; or work more strenuous than or exceeding the limits of light work duty restrictions of previous work).

[12] *Central State Hospital*, 147 Ga. App. at 310 (1) (c) (emphasis supplied).

10

his pre-existing condition was independently aggravated by work that was not normal, and that Prather had not suffered a change in condition.[13]

*Shaw Industries v. Scott*,[14] relied on by Evergreen, is clearly distinguishable. The facts in *Scott*, as later summarized by our Supreme Court in a unanimous affirmance,[15] showed that the employee, after she suffered a foot injury and was awarded compensation, "returned to work in a new position that required no strenuous activity, but she developed knee and gait problems as a result of the wear

---

[13] *Haralson County v. Lee*, 264 Ga. App. 68, 71 (589 SE2d 872) (2003); *Georgia-Pacific Corp. v. Sanders*, 171 Ga. App. 799, 804 (2) (320 SE2d 850) (1984) (holding that "[b]ecause the evidence does not conclusively establish either a change in condition or a new accident, our inquiry on appeal is limited to a consideration of whether the board's finding of a change in condition is supported by any evidence").

[14] 310 Ga. App. 750 (713 SE2d 917) (2011), *aff'd Scott v. Shaw Industries, Inc.*, 291 Ga. 313 (729 SE2d 327) (2012)

[15] In its *amicus curiae* brief, the Georgia Legal Foundation argued that it was "premature" for this Court to treat our decision in *Shaw Industries v. Scott* as binding precedent because of our Supreme Court's decision to grant certiorari in that case. Suffice it to say, we are never at liberty to ignore or disregard a binding precedent of this Court. *See* Court of Appeals Rule 33 (a) ("If an appeal is decided by a division, a judgment in which all three judges fully concur is a binding precedent . . . ."). A unanimous decision by a three-judge panel of this Court remains binding precedent until such time as it is modified or reversed by this Court *en banc* or our Supreme Court.

and tear of ordinary life."[16] Here, however, Prather returned to work in a totally different position that required substantial physical activity, the normal scope of that work changed, and there was some evidence that his condition worsened as a result of the altered working conditions. Accordingly, we conclude that this case is more akin to *R.R. Donnelly v. Ogletree*, in which we affirmed the ALJ's finding that an employee suffered a new accident, noting that "[w]hen [claimant] returned to work after his initial work injury, he was no longer performing normal or ordinary duties."[17]

In light of the foregoing, the judgment of the superior court upholding the award of the Appellate Division is affirmed.

*Judgment affirmed. Ellington, C. J., and Phipps, P. J., concur.*

---

[16] *Scott*, 291 Ga. at 315.

[17] *R.R. Donnelly*, 312 Ga. App. at 479 (1).

12