A02A0674. JONES COUNTY BOARD OF EDUCATION et al.
v. PATTERSON.
(564 SE2d 777)

ELLINGTON, Judge.

We granted the Jones County Board of Education's application for discretionary appeal in this workers' compensation case to determine if the superior court exceeded the lawful scope of its review in reversing the decision of the appellate division of the State Board of Workers' Compensation. Both the administrative law judge and appellate division concluded that employee Cecil B. Patterson experienced a change in condition for the better which authorized the sus-

pension of his workers' compensation benefits. Because the record reveals evidence supporting the appellate division's decision, we must reverse the order of the superior court.

> In reviewing a workers' compensation award, both this court and the superior court must construe the evidence in the light most favorable to the party prevailing before the appellate division. It is axiomatic that the findings of the [State Board of Workers' Compensation], when supported by any evidence, are conclusive and binding, and that neither the superior court nor this court has any authority to substitute itself as a fact finding body in lieu of the Board.

(Citation and punctuation omitted.) *Olde South Custom Landscaping v. Mathis*, 229 Ga. App. 316 (494 SE2d 14) (1997).

In 1992, Patterson was employed by the school board as a vice principal, earning $50,000 a year for forty hours of work per week for nine months out of the year. He supplemented his income by working an additional 14 hours per week for the school board as a maintenance man. Patterson earned roughly $90 per week for that job.

On June 3, 1992, Patterson fell off a ladder while painting the school gym and fractured his forearm and right fibular and sprained his ankle and elbow. Patterson did not lose any time from his job as an assistant principal. However, he claimed he was temporarily unable to perform his maintenance work. Patterson's claim was treated as "concurrent dissimilar" employment, allowing him to receive temporary total disability payments for the loss of his maintenance work income even though he performed other work for the same employer. Patterson was released to medium-duty work shortly after the accident.

Since 1992, Patterson has seen the doctor about his injury only three times and only at the request of his employer. He is not taking medication for pain. In 1998, Patterson's doctor advised him that he could resume his painting work as long as he did not lift more than 50 pounds and stayed off ladders. Patterson, however, never resumed any of his maintenance duties; instead, he continuously received workers' compensation benefits from the date of his accident. Patterson's doctor noted that he had achieved maximum medical improvement and had a "whole person impairment" of 13 percent.

In 1998, Patterson accepted a job as principal of an elementary school. The job pays $70,000 per year. Patterson testified that he now works 50 to 60 hours per week for all 12 months of the year. He admittedly works more and earns more now than in his previous two jobs combined. Patterson testified that he has made no effort to find part-time work. An expert testified that 21 suitable part-time jobs

were currently available within Patterson's work restrictions and that Patterson was an excellent candidate for each of the jobs. Patterson admitted that some of the jobs interested him; however, with his duties as principal, he needed his extra time for rest.

Under Georgia law, the term "change in condition" means "a change in the wage-earning capacity, physical condition, or status of an employee . . . , which change must have occurred after the date on which the wage-earning capacity, physical condition, or status of the employee or other beneficiary was last established by award or otherwise." OCGA § 34-9-104 (a) (1); *Freeman v. Continental Baking Co.*, 212 Ga. App. 855, 856 (1) (443 SE2d 520) (1994). To suspend Patterson's benefits based upon a change in condition, the school board was required to show that Patterson experienced a physical change for the better, that he could return to work because of that change, and that jobs were available that would decrease or end his loss of income. See *Smith v. Brown Steel &c. Trust Fund*, 232 Ga. App. 698, 699 (2) (503 SE2d 592) (1998).

The record reveals that Patterson was physically able to return to medium-duty maintenance work and that many comparable part-time jobs were available within his work restrictions. Although Patterson testified he was experiencing joint pain, he was not taking pain medication and he was not in need of continued medical treatment for his injury. That Patterson was capable of returning to comparable, part-time employment was further evidenced by the fact that he was working as many hours in his current job as he had been in his previous two jobs combined. Moreover, Patterson was making considerably more money in his new job than in both of his old ones, evidencing a change in his economic condition for the better. The ALJ found that Patterson was capable of performing a second part-time job, but that he chose not to work a second job for reasons that had nothing to do with a lack of employment opportunity or his physical disability. This evidence supports the ALJ's and appellate division's finding that Patterson experienced a change in condition for the better, authorizing the suspension of benefits. See *Smith v. Brown Steel*, 232 Ga. App. at 699 (2); see also *Jarallah v. Pickett Suite Hotel*, 204 Ga. App. 684, 685-687 (1) (420 SE2d 366) (1992). Therefore, the superior court erred in reversing the appellate division.

*Judgment reversed. Smith, P. J., and Eldridge, J., concur.*

DECIDED APRIL 25, 2002.

*Carlock, Copeland, Semler & Stair, Christopher A. Whitlock, Kelly M. Clark*, for appellants.
*Wayne B. Bradley*, for appellee.