**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**July 15, 2016**

# In the Court of Appeals of Georgia

A16A0092. MCDUFFIE v. OCMULGEE EMC et al.

MILLER, Presiding Judge.

Kasabian McDuffie injured his right knee in 2009 while working as a meter reader/right-of-way laborer for Ocmulgee EMC ("EMC"), and EMC initially paid him workers' compensation indemnity benefits. EMC subsequently suspended those benefits and then fired McDuffie for falsely omitting his prior knee injury and his permanent sedentary work restrictions from his job application with EMC. Following a hearing, an administrative law judge ("ALJ") on the State Board of Workers' Compensation (the "Board") denied McDuffie's request for reinstatement of his indemnity benefits, and the Board's Appellate Division and the Superior Court affirmed. This Court granted McDuffie's application for discretionary review, and he

appeals, contending that the superior court erred in affirming the ALJ's decision.[1] After a thorough review of the record, we find that the evidence supports the ALJ's finding that McDuffie experienced a change in condition for the better. Nevertheless, as set forth below, the ALJ failed to make factual findings regarding whether EMC met its burden of proving that suitable work was available for McDuffie, such that EMC could discontinue his indemnity benefits. Accordingly, we affirm the judgment in part, vacate in part, and remand this case for additional findings.

"In reviewing an award of workers' compensation benefits, . . . this Court [is] required to construe the evidence in a light most favorable to the party prevailing before the [ALJ]. . . ." *Bibb County Bd. of Educ. v. Bembry*, 286 Ga. App. 878 (650 SE2d 427) (2007).

So viewed, the record shows that McDuffie suffered an injury to his right knee in 2002 ("2002 injury") when he was employed by Eastman Youth Detention Center ("EYDC"). McDuffie settled his claim for workers' compensation benefits with EYDC, and by July 2003, he had undergone three knee surgeries. McDuffie admitted in his settlement agreement that he was partially disabled, his condition would not improve, and there was no possibility of his being able to perform the same type of

_____

[1]

gainful employment on a regular basis in the future. McDuffie's doctor gave him a 20 percent permanent impairment rating for his right knee and placed him on permanent sedentary work restrictions. As a result, McDuffie was out of work from 2002 until 2006.

In March of 2007, McDuffie applied for a job at EMC and he was hired to work as a meter reader/right-of-way laborer. When he filled out his EMC job application, McDuffie omitted relevant information that would have shown that he was physically unable to do the job for which he was applying. Specifically, McDuffie failed to disclose his 2002 injury, his employment with EYDC, or his permanent sedentary work restrictions. Moreover, McDuffie indicated on his application that he was physically able to perform the job functions of a meter reader/right-of-way laborer, which required him to stand, walk, and carry parts, and required him to have the ability to get an injured person off a pole within a short period of time.

In September 2009, while working on the job for EMC, McDuffie stepped in a hole and re-injured his right knee (the "2009 injury"). McDuffie's indemnity benefits commenced shortly after his injury. In March of 2010, EMC discovered that McDuffie had provided false information on his job application when he stated that

he was physically able to do the job and failed to disclose his prior injury or sedentary work restrictions. After learning this, EMC fired McDuffie and suspended his indemnity benefits. It is undisputed that, in February 2011, EMC reinstated McDuffie's indemnity benefits once McDuffie's doctor, Dr. Pope, recommended an additional surgery. That surgery was performed in March 2011, and after that surgery, Dr. Pope released McDuffie to return to work with sedentary restrictions.

In July 2011, Dr. Pope opined that McDuffie had returned to his pre-injury baseline, i.e., his pre-2009 sedentary work restrictions, and EMC again suspended McDuffie's indemnity benefits. Another physician, Dr. Gupta, who also examined McDuffie, similarly opined that McDuffie's knee had been restored to its pre-2009 injury status.

1. On appeal, McDuffie contends that the superior court erred by affirming the the full Board's decision regarding the claimant's pre-injury baseline condition because of the contradictory evidence of his actual physical condition before the 2009 injury. We disagree.

In a workers' compensation case, the employer has the burden of proving that an employee has undergone a change for the better and is able to return to work. *Vulcan Materials Co. v. Pritchett*, 227 Ga. App. 530, 531 (1) (489 SE2d 558) (1997).

4

It is well established that, in reviewing the ALJ's determination as to whether the employer has met its burden, the ALJ's award "will not be disturbed where there is *any* evidence to support it." (Citation, punctuation and footnote omitted.) *Bembry*, supra, 286 Ga. App. at 879. Moreover, it is within the province of the ALJ to determine the weight and credit to be given to a physician's opinion testimony in a workers' compensation case and to resolve issues of fact arising from contrary opinions of the respective physicians of the claimant. Id. at 878-880; see also *Young v. Columbus Consolidated Govt.*, 263 Ga. 172 (1) (430 SE2d 7) (1993) (where there are conflicts in the evidence, the resolution of discrepancies and the determination of the witnesses' credibility are matters for the ALJ). The ALJ's factual findings are conclusive and binding when supported by *any* evidence. See *Bembry*, supra, 286 Ga. App. at 878.

Here, both Dr. Pope and Dr. Gupta opined that McDuffie had returned to his pre-2009 baseline condition, i.e., his sedentary work restrictions. We note that the record contains conflicting evidence as to whether McDuffie was capable of performing the non-sedentary functions of his job while working for EMC prior to his 2009 injury. The record also contains a conflicting medical opinion stating that McDuffie's work restrictions and pain were related to his 2009 injury, rather than his

2002 injury. The ALJ, however, considered and weighed this conflicting evidence in EMC's favor. Notably, the ALJ specifically found that McDuffie had improved to the extent that he had no work restrictions other than the permanent sedentary work restrictions he was under when he was hired by EMC. Accordingly, the ALJ found that EMC had proven a change in condition for the better and the full Board agreed. Since there is some evidence which supports the ALJ's factual finding on this issue, we affirm the ALJ's and the full Board's finding that McDuffie experienced a physical change for the better. See *Bembry*, supra, 286 Ga. at 878-880; *Young*, supra, 263 Ga. at 172 (1).

2. McDuffie contends that Dr. Gupta's and Dr. Pope's expert opinions do not constitute legally competent evidence in support of the ALJ's findings of fact because these opinions were not based on reasonable medical certainty. In support of this argument, McDuffie cites *Aleman v. SugarLoaf Dialysis, LLC*, 312 Ga. App. 658 (719 SE2d 551) (2011). The decision in *Alemen* is inapposite, however, because that case involved a motion for summary judgment in a medical malpractice case, and in such cases, conflicting evidence prevents the trial court from granting motions for summary judgment. By contrast, in workers' compensation cases, Georgia law

6

explicity grants the ALJ authority to weigh and rule on conflicting medical evidence. See *Bembry*, supra, 286 Ga. at 880.

Moreover, in workers' compensation cases, medical testimony does not have to be reasonably certain. Rather, expert medical opinions need to be based at least on a reasonable probability. See *McDaniel v. Employers Mut. Liability Ins. Co.*, 104 Ga. App. 340, 343-344 (121 SE2d 801) (1961); see also *Cabin Crafts, Inc. v. Pelfrey*, 119 Ga. App. 809, 811 (2) (168 SE2d 660) (1969) (in a workers' compensation case, medical testimony that there is a reasonable probability that activities at work contributed to the injury is sufficient to support a finding that it did). Additionally, the record belies McDuffie's argument that Dr. Pope's and Dr. Gupta's opinions were not based on personal observation and a reasonable probability. Rather, ample evidence in the record shows that both doctors based their opinions on their actual treatment of McDuffie and their personal knowledge of his condition. Notably, Dr. Gupta testified that he examined McDuffie three or four times. Dr. Pope testified that he also examined and treated McDuffie, reviewed McDuffie's MRI, recommended an arthroscope procedure, which was done in October 2009, and performed a lateral meniscectomy on McDuffie's right knee.

3. McDuffie contends that EMC was required to show that suitable employment was available. We agree.

> Where the evidence authorizes, as it did in this case, a finding that the claimant has fully recovered from the injury received on the job and no longer suffers any disability therefrom, an award holding that there has been a change in condition is proper. This is true even though the claimant is disabled if such disability is due to causes unrelated to the on the job injury.

(Citations omitted; emphasis supplied) *Williams Bros. Lumber Co. v. Magee*, 162 Ga. App. 865 (292 SE2d 477) (1982). Nevertheless, EMC could not suspend McDuffie's workers' compensation benefits based on a change in condition for the better without showing that McDuffie could return to work because of that change *and* that EMC offered McDuffie suitable work. See *Jones County Bd. of Ed. v. Patterson*, 255 Ga. App. 166, 168 (564 SE2d 777) (2002); *Smith v. Brown Steel*, 232 Ga. App. 698, 699 (2) (503 SE2d 592) (1998).

The key determination is whether there was suitable work available and offered to McDuffie to diminish or terminate the loss in income. *Sadie G. Mays Memorial Nursing Home v. Freeman*, 163 Ga. App. 557, 559 (3) (295 SE2d 340) (1982). If

suitable work was not available, then EMC was required to continue paying indemnity benefits to McDuffie.

Regardless of the circumstances in this case, the Workers' Compensation Act is highly remedial in nature and this Court must construe it liberally in favor of the claimant in order to accomplish its "beneficent" purposes. See *CGU Ins. Co. v. Sabel Indus.*, 255 Ga. App. 236, 243 (2) (564 SE2d 836) (2002); *Homebuilders Assn. of Georgia v. Morris*, 238 Ga. App. 194, 197 (518 SE2d 194) (1999). Although the ALJ recognized that EMC had the burden of proving that suitable work was available, the ALJ made no findings of fact on that issue. Moreover, the ALJ made no factual findings regarding McDuffie's entitlement to indemnity benefits if suitable work was available and not offered to him. Finally, the ALJ failed to make any factual findings regarding EMC's obligation to continue paying indemnity benefits to McDuffie if suitable work was not available. Consequently, we vacate the judgment of the Superior Court in part, and remand this case to the Superior Court with direction that the case be remanded to the full Board with instructions for the ALJ to make further findings of fact in accordance with this opinion. See *Freeman*, supra, 163 Ga. App. at 559 (3) (full Board should have considered and made appropriate factual findings

9

with regard to issue of whether suitable work was available). In so holding, we express no opinion as to what constitutes suitable work under these circumstances.

We note, however, in accordance with the ALJ's separate holding, which was not challenged on appeal, that EMC remains responsible for providing and paying for reasonable and necessary medical treatment related to McDuffie's 2009 injury.

*Judgment affirmed in part and vacated in part, and case remanded with direction. Dillard and Peterson, J J., concur. Branch, McMillian, and Mercier, JJ., concur fully in Divisions 1 and 2, and in the judgment only as to Division 3. Ellington, P. J., and Phipps, P. J., concur in the judgment only. McFadden, J., dissents.*

A16A0092. MCDUFFIE v. OCMULGEE EMC et al.

MCFADDEN, Judge, dissenting.

McDuffie was injured in 2002, given a sedentary work restriction in 2005, and injured again in 2009. The principal issue in this case is whether his condition improved between 2005 and 2009. The majority purports to affirm a finding by the ALJ and the appellate division that his condition did not improve during that time. On the basis of that purported finding, the majority holds that, once McDuffie had recovered from his 2009 injury to the extent he was in the same condition he had been in in 2005, EMC was authorized to discontinue his workers compensation benefits.

11

But those tribunals did not so find. And the doctors whose testimony the majority cites did not so testify. I therefore respectfully dissent.

As the majority holds, we must construe the evidence in the light most favorable to the party prevailing before the appellate division. *Evergreen Packaging v. Prather*, 318 Ga. App. 440, 443 (734 SE2d 209) (2012). "Nevertheless, we review de novo erroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law." Id. at 443 (citation and punctuation omitted).

The ALJ made an express factual finding that, when McDuffie was injured in 2009, he was performing the essential functions of a non-sedentary job. Specifically, she found that McDuffie "did perform the essential functions" of a position that "is more strenuous than light duty." There was evidence to support this finding, and EMC does not appear to dispute it.

The ALJ did not find that when EMC stopped paying McDuffie's workers' compensation benefits, McDuffie was again able to perform the essential functions of a position that is more strenuous than light duty. Instead, she found that when EMC stopped paying benefits, McDuffie "was still having problems with his knee" but had "improved to the extent that he ha[d] no restrictions *other than those he already was under at the time he was hired by EMC*," namely restrictions imposed

12

in 2005 that limited him to sedentary work. (Emphasis supplied.) There was evidence to support this finding, as well. The appellate division accepted the ALJ's factual findings in affirming her decision.

Nevertheless, the ALJ concluded that McDuffie was not entitled to continued workers' compensation benefits on the ground that his post-injury condition – restricted to sedentary work – was the same as his 2005 pre-injury condition – restricted to sedentary work. This conclusion was erroneous, given that by 2009 McDuffie was capable of and was in fact performing non-sedentary work.

The Workers' Compensation Act defines the term "change in condition," in pertinent part, to mean "a change in the . . . physical condition . . . of an employee . . . , which change must have occurred after the date on which the . . . physical condition . . . was last established by award or otherwise."OCGA § 34-9-104 (a) (1). And it recognizes as a compensable injury the aggravation of a preexisting condition, "for so long as the aggravation of the preexisting condition continues to be the cause of the disability[.]" OCGA § 34-9-1 (4). Neither of these provisions authorized the ALJ to look to McDuffie's physical condition in 2005, rather than his physical condition immediately before his injury in 2009, to determine his eligibility for continued benefits as his condition improved in 2011.

13

The ALJ, as factfinder, was entitled to credit the medical testimony that by 2011 McDuffie had returned to a level of physical ability where he could perform sedentary work. But the doctors who treated him at that time and who provided that testimony were not familiar with McDuffie's physical condition immediately before his 2009 injury and so did not purport to be able to opine about his condition immediately before his 2009 injury .

In any event, the ALJ found that McDuffie was capable of more than sedentary work immediately before the 2009 injury. It thus was error for her to conclude, and for the appellate division and superior court to affirm, that McDuffie's capability for sedentary work following the 2009 injury precluded him from further workers' compensation benefits.