302 Ga. 640
FINAL COPY

S17G0038. OCMULGEE EMC et al. v. McDUFFIE.

NAHMIAS, Justice.

We granted the petition for certiorari filed by Ocmulgee EMC[1] in this workers' compensation case to answer this question:

> Must an employer show the availability of suitable employment to justify suspension of workers' compensation benefits after already establishing that an employee's work-related aggravation to a preexisting condition has ceased to be the cause of the employee's disability?

The Court of Appeals held that the answer is yes. See McDuffie v. Ocmulgee EMC, 338 Ga. App. 200, 203 (789 SE2d 415) (2016). Because the answer is no, we reverse that part of the Court of Appeals' opinion.

1. The Court of Appeals recited the relevant facts, as viewed in the light most favorable to the decision of the Administrative Law Judge ("ALJ") from the State Board of Workers' Compensation ("Board"):

[Kasabian] McDuffie suffered an injury to his right knee in

---

[1] The other appellant in this case is Georgia Administrative Services, the third party administrative service for Ocmulgee EMC's workers' compensation insurance. We refer to the parties collectively as "EMC."

2002 ("2002 injury") when he was employed by Eastman Youth Detention Center ("EYDC"). McDuffie settled his claim for workers' compensation benefits with EYDC, and by July 2003, he had undergone three knee surgeries. McDuffie admitted in his settlement agreement that he was partially disabled, his condition would not improve, and there was no possibility of his being able to perform the same type of gainful employment on a regular basis in the future. McDuffie's doctor gave him a 20 percent permanent impairment rating for his right knee and placed him on permanent sedentary work restrictions. As a result, McDuffie was out of work from 2002 until 2006.

In March 2007, McDuffie applied for a job at EMC and he was hired to work as a meter reader/right-of-way laborer. When he filled out his EMC job application, McDuffie omitted relevant information that would have shown that he was physically unable to do the job for which he was applying. Specifically, McDuffie failed to disclose his 2002 injury, his employment with EYDC, or his permanent sedentary work restrictions. Moreover, McDuffie indicated on his application that he was physically able to perform the job functions of a meter reader/right-of-way laborer, which required him to stand, walk, and carry parts, and required him to have the ability to get an injured person off a pole within a short period of time.

In September 2009, while working on the job for EMC, McDuffie stepped in a hole and re-injured his right knee (the "2009 injury"). McDuffie's indemnity benefits commenced shortly after his injury. In March 2010, EMC discovered that McDuffie had provided false information on his job application when he stated that he was physically able to do the job and failed to disclose his prior injury or sedentary work restrictions. After learning this, EMC fired McDuffie and suspended his indemnity benefits. It is undisputed that, in February 2011, EMC reinstated McDuffie's indemnity benefits once McDuffie's doctor, Dr. Pope, recommended an additional surgery. That surgery was performed in March 2011, and after that surgery, Dr. Pope released McDuffie

to return to work with sedentary restrictions.

In July 2011, Dr. Pope opined that McDuffie had returned to his pre-injury baseline, i.e., his pre-2009 sedentary work restrictions, and EMC again suspended McDuffie's indemnity benefits. Another physician, Dr. Gupta, who also examined McDuffie, similarly opined that McDuffie's knee had been restored to its pre-2009 injury status.

McDuffie, 338 Ga. App. at 200-201.

The ALJ who heard McDuffie's request to reinstate his benefits specifically found the opinions of Dr. Pope and Dr. Gupta to be credible and held that EMC "has shown and proven the employee's restrictions are the same as prior to the 2009 injury" and that McDuffie "has no restrictions other than those he already was under at the time he was hired by [EMC]." Accordingly, the ALJ denied McDuffie's request for reinstatement of benefits. McDuffie appealed that decision to the Board's Appellate Division, which accepted the ALJ's findings as supported by the evidence and further explained:

Generally, if an employer/insurer can show by a preponderance of the competent and credible evidence that an employee no longer suffers any disability due to his work-related injury, then the employer/insurer need not show the specific availability of suitable employment to justify suspending temporary total disability benefits for change of condition. Pierce v. AAA Cabinet Co., 173 Ga. App. 463 [(326 SE2d 575)] (1985). Even where an employee has neither actually returned to work nor become capable of returning to work, an employer/insurer may

3

satisfy their burden, if the employer/insurer can demonstrate that the employee's current disability is not casually connected with his employment. See Southwire Co. v. Molden, 223 Ga. App. 389 [(477 SE2d 646)] (1996); Raley v. Lanco Paint & Drywall, 190 Ga. App. 462 [(379 SE2d 196)] (1989).

. . .

Once the administrative law judge established by a preponderance of the competent and credible evidence that [McDuffie] had been restored to his pre-injury baseline condition, so that he no longer suffered any work-related disability, no further findings in this regard were required in order for the administrative law judge to conclude that [EMC] had carried [its] burden of proof to justify suspending [McDuffie]'s income benefits.

McDuffie then appealed to the superior court, which summarily affirmed the Appellate Division's order in June 2015.[2]

McDuffie filed an application for discretionary appeal in the Court of Appeals, which was granted. Division 1 of the court's subsequent opinion, which was joined fully by six of the nine judges deciding the case, affirmed the ALJ's finding that EMC proved that McDuffie "had improved to the extent that he had no work restrictions other than the permanent sedentary work restrictions

---

[2] This case first came before the ALJ in 2012. After the ALJ and then the Appellate Division held that McDuffie was not entitled to benefits, McDuffie appealed to the superior court. The superior court concluded that the ALJ erred in not making findings of fact with regard to McDuffie's ability to return to work and the availability of such work. The court therefore remanded the case to the ALJ to make such findings. Both parties filed applications for discretionary appeal in the Court of Appeals, which were both granted, but the appeals were later dismissed as improvidently granted.

he was under when he was hired by EMC." McDuffie, 338 Ga. App. at 202.[3]

Division 3, which was joined fully by only three judges, concluded that the ALJ erred when she "failed to make factual findings regarding whether EMC met its burden of proving that suitable work was available for McDuffie" and therefore vacated the judgment in part and remanded the case for those additional findings. Id. at 200. See also id. at 203 (citing Jones County Bd. of Ed. v. Patterson, 255 Ga. App. 166, 168 (564 SE2d 777) (2002), and Smith v. Brown Steel, 232 Ga. App. 698, 699 (503 SE2d 592) (1998)). The opinion did not cite or distinguish Pierce, Molden, or Raley, the cases on which the Board's Appellate Division had relied.[4]

Both McDuffie and EMC filed a petition for certiorari, McDuffie challenging Division 1 and EMC challenging Division 3. This Court denied McDuffie's petition, but granted EMC's petition, asking the question set forth above.

2.     Because McDuffie had a preexisting disability at the time of his

---

[3] Judge McFadden alone dissented on this point, arguing that it was error for the ALJ to find that McDuffie had returned to his baseline condition. See McDuffie, 338 Ga. App. at 204.

[4] In Division 2, which six judges also joined, the court rejected McDuffie's contention that the two doctors' expert opinions did not constitute competent evidence to support the ALJ's findings. See McDuffie, 338 Ga. App. at 202-203. Three judges concurred in judgment only as to Divisions 2 and 3, and two judges joined the entire opinion in judgment only.

injury in 2009 while working at EMC, the relevant question is whether he returned to his pre-2009-injury condition, not whether he returned to full capacity. In cases where a job-related injury has merely improved but the employee is still suffering from effects of the injury that limit his capacity to work — the factual scenario in the cases the Court of Appeals here cited as controlling — the employer must show the availability of suitable employment before terminating benefits. See, e.g., Patterson, 255 Ga. App. at 168; Smith, 232 Ga. App. at 699.

However, as the Court of Appeals has repeatedly explained in cases similar to this one and as the Board's Appellate Division recognized, when an employee has a *preexisting* condition that limits his work capacity *before* the on-the-job injury, as soon as the effects of the on-the-job injury cease, the employer's responsibility for workers' compensation also ceases. The employer is not responsible for compensating the employee until the preexisting condition improves as well or for showing that work exists suitable for an employee with that preexisting disability. See Pierce, 173 Ga. App. at 464 ("Since appellant's continued unemployment is not due to his former disability, the employer has no further responsibility for appellant's economic condition. That being so,

6

there was no necessity that appellee show that work is available to appellant."). See also Molden, 223 Ga. App. at 391 ("[The employer] needed only establish that benefits were terminated because [the employee's] present disability was not causally connected with his employment."); Raley, 190 Ga. App. at 464 ("[T]he issue to be resolved is whether the evidence demanded a finding that appellant's current [disability] is not attributable to his original work-related accident. If, but only if, the evidence demanded such a finding, appellant has no right to continued compensation . . . ."). This is true whether the other condition causing a disability has existed since birth, see Molden, 223 Ga. App. at 389, or, like here, was caused by an accident unrelated to the employee's work with the compensating employer, see Williams Bros. Lumber Co. v. Magee, 162 Ga. App. 865, 865 (292 SE2d 477) (1982).

The holding in these cases accords with the current text of the Workers' Compensation Act. In relevant part and with emphasis added, OCGA § 34-9-1 (4) defines the term "injury" as used in the Act as

> only injury by accident arising out of and in the course of the employment and shall not, except as provided in this chapter, include a disease in any form except where it results naturally and unavoidably from the accident. Except as otherwise provided in this chapter, "injury" and "personal injury" *shall include the*

*aggravation of a preexisting condition by accident arising out of and in the course of employment, but only for so long as the aggravation of the preexisting condition continues to be the cause of the disability; the preexisting condition shall no longer meet this criteria when the aggravation ceases to be the cause of the disability. . . .*

Here, the Court of Appeals affirmed the ALJ's finding that EMC had met its burden of showing that McDuffie had returned to his pre-2009-injury status when EMC suspended his indemnity benefits, and we did not grant McDuffie's certiorari petition seeking review of that fact-specific conclusion. It follows from that ruling that EMC was no longer required to pay McDuffie workers' compensation indemnity benefits. No further factfinding is needed, so the Court of Appeals erred in remanding this case for the ALJ court to determine if EMC demonstrated suitable employment for McDuffie. See, e.g., Pierce, 173 Ga. App. at 464. We therefore reverse the Court of Appeals' judgment on that issue and thereby affirm in full the decision reached by the ALJ, the Appellate Division of the State Board of Workers' Compensation, and the superior court.

Judgment reversed in part. Hines, C. J., Melton, P. J., Benham, Hunstein, Blackwell, Boggs, Grant, JJ., and Judge Cynthia C. Adams concur. Peterson, J., disqualified.

8

Decided October 16, 2017.

Certiorari to the Court of Appeals of Georgia — 338 Ga. App. 200.

Hall Booth Smith, Frederick L. Hubbs, Jr., David S. Dix, for appellants.

Nelson & Smith, Blake J. Smith, David B. Ricks, for appellee.

Drew Eckl & Farnham, John G. Blackmon, Jr.; Sponslor, Bishop, Koren & Hammer, Ann B. Bishop, amici curiae.